1

2

3

4              UNITED STATES DISTRICT COURT

5              NORTHERN DISTRICT OF CALIFORNIA

6

7    GARY HEFLER, et al.,                    Case No. 16-cv-05479-JST

8              Plaintiffs,

9         v.                                 **ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTIONS TO
10   WELLS FARGO & COMPANY, et al.,          DISMISS**

11             Defendants.                   Re: ECF Nos. 135, 138, 139, 142, 143, 145,
                                             147, 153, 156, 158

12

13        Pending before the Court Are the Motions to Dismiss the Consolidated Class Action

14   Complaint ("Complaint") for Violations of the Federal Securities Laws filed by defendants Wells

15   Fargo & Company ("Wells Fargo Motion"), ECF 135; Carrie L. Tolstedt, ECF No. 138;  Michael

16   J. Loughlin, ECF No. 139;  David M. Carroll, ECF No. 142; James M. Strother, ECF No. 143;

17   David Julian and Avid Modjtabai, ECF No. 145; John D. Baker III, John S. Chen, Lloyd H. Dean,

18   Elizabeth A. Duke, Susan E. Engel, Enrique Hernandez, Jr., Donald M. James, Cynthia H.

19   Milligan, Federico F. Pena, James H. Quigley, Judith M. Runstad, Stephen W. Sanger, Susan G.

20   Swenson, Suzanne M. Vautrino (collectively, "Independent Directors")[1], ECF 147; John G.

21   Stumpf, ECF No. 153; and Hope Hardison , ECF No. 158.  The Court will grant the motions in

22   part and deny them in part.

23   **I.    RELATED CASE ORDER**

24        On October 4, 2017, this Court filed an Order Granting in Part and Denying In Part

25   Motions to Dismiss in a related case.  In re Wells Fargo & Company Shareholder Derivative

26   Litigation, No. 16-cv-05541 JST, ECF No. 174 (N.D. Cal. Oct. 4, 2017) ("Derivative Litigation

27

28   [1] Various of the defendants joined in all or part of each other's motions.  ECF Nos. 155, 156, 158,
     159, and 165.

United States District Court
Northern District of California

1  Order").  The complaint in the derivative action contains many claims that are substantially

2  similar, and in some cases identical, to those in the Complaint here.  Accordingly, the Court refers

3  to the Derivative Litigation Order when that order sets forth the Court's reasoning as to a

4  particular claim or argument.

5  **II.    BACKGROUND**

6         This is a securities fraud class action brought on behalf of all persons who purchased Wells

7  Fargo stock between February 26, 2014 and September 20, 2016, against certain current and

8  former Wells Fargo officers and directors.  ECF No. 72, Consolidated Class Action Complaint for

9  Violations of the Federal Securities Laws ("Compl.") ¶ 2.

10         In addition to Wells Fargo itself, the Complaint names two groups of defendants: "Officer

11  Defendants" and "Director Defendants."  The Officer Defendants include John Stumpf (Chairman

12  of the Board and Chief Executive Officer during the entirety of the Class Period); John

13  Shrewsberry (Chief Financial Officer during part of the Class Period); Carrie Tolstedt (Senior

14  Executive Vice President of Community Banking during the Class Period until her resignation on

15  July 31, 2016); Timothy Sloan (Chief Financial Officer, Chief Operating Officer, and head of

16  Wholesale Banking during different points of the Class Period); David Carroll (Senior Executive

17  Vice President in charge of the Wealth, Brokerage and Retirement Group during the Class Period);

18  David Julian (Company's Chief Auditor during the Class Period); Hope Hardison (Senior

19  Executive Vice President and Human Resources Director during the Class Period); Michael

20  Loughlin (Senior Executive Vice President and Chief Risk Officer during the Class Period); Avid

21  Modjtabai (Head of Consumer Lending during the Class Period), and James Strother (Company's

22  General Counsel during the Class Period).  Compl. ¶¶ 51-61.  The Director Defendants were

23  members of the Wells Fargo Board of Directors and various committees during the Class Period.

24  They include John Baker, John Chen, Lloyd Dean, Elizabeth Duke, Susan Engel, Enrique

25  Hernandez, Donald James, Cynthia Milligan, Federico Peña, James Quigley, Judith Runstad,

26  Stephen Sanger, Susan Swenson, and Suzanna Vautrinot.[2]  Id. ¶¶ 62-76.  Wells Fargo is also a

27

28  _____
   [2] Defendant Stumpf is also considered a Director Defendant.  Compl. ¶ 76.

United States District Court
Northern District of California

1  defendant.  Id. ¶ 5.

2     The gist of the Complaint is that Wells Fargo made repeated "misrepresentations and

3  omissions about a core element of Wells Fargo's business: its acclaimed 'cross-selling' business

4  model" in which Wells Fargo emphasized the sale of multiple Wells Fargo products to existing

5  customers.  Id. ¶ 3.[3]  Throughout the class period, Wells Fargo allegedly touted its cross-selling

6  model as the reason for its financial success, when in fact Wells Fargo and the individual

7  defendants knew that many of the purported "sales" to existing customers never took place –

8  because Wells Fargo had instead secretly opened new deposit and credit card accounts for those

9  customers without their knowledge or permission.  Id. ¶¶ 3-5.  Plaintiffs note that the government

10 found – and Wells Fargo executives have admitted – that Wells Fargo opened unauthorized

11 accounts for existing customers and transferred funds to those accounts without the customers'

12 knowledge or consent; submitted applications for credit cards in customers' names without their

13 consent; enrolled customers in online banking services they did not request; and ordered and

14 activated debit cards using customer information without customers' consent.  Id.  Plaintiffs allege

15 that Wells Fargo employees resorted to committing fraud because of a "toxic, high-pressure sales

16 culture and ill-conceived compensation plan" and "[r]uthless pressure" exerted from the top down.

17 Id. ¶¶ 7-8.  Plaintiffs further allege that Wells Fargo has been aware of these practices since at

18 least 2011, and the Company's highest executives and Board of Directors have been aware of

19 them since 2013.  Id. ¶ 8.  As summarized by the Plaintiffs:

20         [A]s the problem persisted and as investigations mounted,
           Defendants continued their aggressive sales and incentive programs,
21         and consistently touted the successes of cross-sell to investors.  The
           price of Wells Fargo stock increased in lockstep and, although faced
22         with investigations and with knowledge that the problem was of a
           significant magnitude, certain of the Defendants sold or disposed of
23         massive amounts of personal holdings of Company stock.

24 Id. ¶ 10.

25    Plaintiffs allege that when the truth about this conduct was revealed over a period of days

26 in September 2016, Wells Fargo's stock price fell from $49.90 to $45.83 per share.  E.g., id. ¶ 187,

27

28 [3] For purposes of this order, the Court accepts the facts alleged in the Complaint.  Navarro v.
   Block, 250 F.3d 729, 732 (9th Cir. 2001).

United States District Court
Northern District of California

190, 223 ("When the truth began to be disclosed in September 2016, Wells Fargo's stock price suffered significant declines, as the artificial inflation was removed from the stock price."). "On September 16, 2016, a Reuters article discussed the 7.5% stock price decline caused by the surprise revelations that the Company had created millions of bank accounts and applied for credit cards without account holders' permission." Id. ¶ 193. And "after the Class Period, on September 26, 2016, CNNMoney published a report titled 'Wells Fargo stock sinks to 2-1/2 year low' attributing the recent price declines to the fake account scandal and settlement disclosed in September 2016." Id. ¶ 239.

Based on the misconduct described above, several related lawsuits were filed against Wells Fargo. ECF Nos. 8, 12, 14, 18, 47, 55. On January 5, 2017, this Court granted Plaintiff Union Asset Management Holding's motion to consolidate Hefler v. Wells Fargo & Co., Case No. 16-cv-5479 with Klein v. Wells Fargo & Co., Case No. 16-cv-5513 and to appoint Union as Lead Plaintiff. ECF No. 58 at 1. Plaintiffs filed their Consolidated Class Action Complaint for violations of the Federal Securities Laws on March 6, 2017. ECF No. 72. In the Complaint, Plaintiffs assert three causes of action: (1) Violations of Section 10(b) of the Securities Exchange Act of 1943 (" 1934 Act") and SEC Rule 10b-5; (2) Violations of Section 20A of the 1934 Act; and (3) Violations of Section 20(a) of the 1934 Act. Defendants filed Motions to Dismiss on June 19, 2017. See ECF Nos. 135, 138, 139, 142, 143, 145, 147, 153, 156, 158.

## III.    REQUEST FOR JUDICIAL NOTICE

Before addressing Plaintiffs' claims, the Court considers the four requests for judicial notice filed by Defendants, ECF Nos. 135-4, 144, 154, 188 and the request filed by Plaintiffs, ECF No. 177.

While the scope of review on a motion to dismiss is generally limited to the contents of the complaint, under Federal Rule of Evidence 201(b), courts may take judicial notice of facts that are "not subject to reasonable dispute." Courts also take notice of documents whose authenticity is not contested and on which the complaint necessarily relies, Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), publicly available financial documents such as SEC filings, Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n. 7 (9th Cir.2008), and publicly

United States District Court
Northern District of California

available articles or other news releases of which the market was aware, Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n. 18 (9th Cir.1999).

Defendants request judicial notice of numerous reports, press releases, news articles, investor presentations, and other filings with the SEC, many of which Plaintiffs reference in the Complaint.  See ECF Nos. 144, 154, 188.  Plaintiffs do not object.  The Court grants this request.

Plaintiffs request judicial notice of numerous reports, press releases, news articles, investor presentations, conference call transcripts and other filings with the SEC, many of which were incorporated by reference in the Complaint.  See ECF No. 177.  Defendants do not object.  The Court grants this request also.

Defendants also request judicial notice of Wells Fargo's historical stock prices and trading volume during the class period.  ECF Nos. 135-4 at 2; 144 at 4; 154 at 5.  Plaintiffs do not object. "The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Court grants this request as well.

The Court takes judicial notice of all the requested exhibits in ECF Nos. 135-4, 144, 154, 177 and 188.  The Court does not take notice of any disputed facts contained within those documents.  Lee, 250 F.3d at 689-90.

## IV.    LEGAL STANDARD

### A.    The Dual Pleading Requirements

Section 10(b) of the Securities Exchange Act of 1934 prohibits any act or omission resulting in fraud or deceit in connection with the purchase or sale of any security.  To establish a violation of Section 10(b), a plaintiff must plead:  (1) a material misrepresentation or omission made by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.  See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, 552 U.S. 148, 157 (2008).

On a motion to dismiss, the Court accepts the material facts alleged in the complaint, together with reasonable inferences to be drawn from those facts, as true.  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  However, "the tenet that a court must accept a complaint's

1  allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported

2  by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Moreover, while a

3  plaintiff generally need only plead "enough facts to state a claim to relief that is plausible on its

4  face" to survive a motion to dismiss, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007),

5  "[s]ecurities fraud class actions must meet the higher, exacting pleading standards of Federal Rule

6  of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ('PSLRA')."  Oregon

7  Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 604 (9th Cir. 2014).

8        Under the PSLRA and Rule 9(b), a complaint must "state with particularity facts giving

9  rise to a strong inference that the defendant acted with the required state of mind" with respect to

10  each alleged false statement or omission, and a party must "state with particularity the

11  circumstances constituting fraud or mistake."  15 U.S.C. § 78u-4(b)(2)(A); Fed. R. Civ. P. 9(b);

12  see also Oregon Pub. Employees Ret. Fund, 774 F.3d at 605.  "In order to show a strong inference

13  of deliberate recklessness, plaintiffs must state facts that come closer to demonstrating intent, as

14  opposed to mere motive and opportunity."  In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970,

15  974 (9th Cir. 1999), abrogated on other grounds by, S. Ferry LP, No. 2 v. Killinger, 542 F.3d 776,

16  784 (9th Cir. 2008).  If the complaint does not satisfy the PSLRA's pleading requirements, the

17  Court must grant a motion to dismiss the complaint.  15 U.S.C. § 78u-4(b)(3)(A).

18        **B.     Falsity and Materiality**

19        The PSLRA provides that "the complaint shall specify each statement alleged to have been

20  misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding

21  the statement or omission is made on information and belief, the complaint shall state with

22  particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  For statements

23  to be actionable under the PSLRA, they must be both false or misleading and material.  A

24  statement or omission is misleading under the PSLRA and Section 10(b) of the Exchange Act "if

25  it would give a reasonable investor the impression of a state of affairs that differs in a material way

26  from the one that actually exists."  Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 985 (9th

27  Cir. 2008).

28        A false or misleading statement or omission is material if there is a "substantial likelihood

United States District Court
Northern District of California

6

that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." TSC Indus., Inc. v. Northway, Inc., 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976).  "To plead materiality, the complaint's allegations must 'suffice to raise a reasonable expectation that discovery will reveal evidence satisfying the materiality requirement, and to allow the court to draw the reasonable inference that the defendant is liable.'" Reese v. Malone, 747 F.3d 557, 568 (9th Cir. 2014) (quoting Matrixx Initiatives, Inc. v. Siracusano, 563 U.S. 27, 131 (2011)).  "'Although determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.'" Id. (quoting In re Cutera Sec. Litig., 610 F.3d 1103, 1108 (9th Cir. 2010)).

## C.    Scienter

The required state of mind under the PSLRA is a "mental state embracing intent to deceive, manipulate, or defraud." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193–94 n.12 (1976). In order to adequately establish scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).

The "strong inference" required by the PSLRA "must be more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 324 (2007).  "A court must compare the malicious and innocent references cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 991 (9th Cir. 2009).  In evaluating whether a complaint satisfies the "strong inference" requirement, courts must consider the allegations and other relevant material holistically, not "scrutinized in isolation." In re VeriFone Holdings, 704 F.3d 694, 701 (9th Cir. 2012).

Deliberate or conscious recklessness constitutes intentional conduct sufficient to satisfy the scienter requirement.  "An actor is deliberately reckless if he had reasonable grounds to believe

United States District Court
Northern District of California

7

1   material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose

2   such facts although he could have done so without extraordinary effort."  Reese, 747 F.3d at 569

3   (quoting In re Oracle Corp. Sec. Litig., 627 F.3d 376, 390 (9th Cir. 2010) (internal alterations

4   omitted)).  "[T]he ultimate question is whether the defendant knew his or her statements were

5   false, or was consciously reckless as to their truth or falsity."  Gebhart v. SEC, 595 F.3d 1034,

6   1042 (9th Cir. 2010).  "Facts showing mere recklessness or a motive to commit fraud and

7   opportunity to do so provide some reasonable inference of intent, but are not independently

8   sufficient."  Reese, 747 F.3d at 569 (quoting In re Silicon, 183 F.3d at 974).

9         **D.**    **Loss Causation**

10        Loss causation, "i.e. a causal connection between the material misrepresentation and the

11   loss" experienced by the plaintiff, is a necessary element of pleading a securities fraud claim under

12   section 10(b) of the Exchange Act.  Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005).  "A

13   complaint fails to allege loss causation if it does not 'provide[ ] [a defendant] with notice of what

14   the relevant economic loss might be or of what the causal connection might be between that loss

15   and the misrepresentation[.]'  Stated in the affirmative, the complaint must allege that the

16   defendant's share price fell significantly after the truth became known.'"  Meltzer Inv. GMBH v.

17   Corinthian Colleges, Inc., 540 F.3d 1049, 1062 (9th Cir. 2008) (quoting Dura Pharm., 544 U.S. at

18   347).  "The burden of pleading loss causation is typically satisfied by allegations that the

19   defendant revealed the truth through 'corrective disclosures' which 'caused the company's stock

20   price to drop and investors to lose money.'"  Lloyd v. CVB Fin. Corp., No. 13-56838, 2016 WL

21   384773, at *8 (9th Cir. Feb. 1, 2016) (citing Halliburton Co. v. Erica P. John Fund, Inc., 134 S. Ct.

22   2398, 2406 (2014)).

23        "Typically, 'to satisfy the loss causation requirement, the plaintiff must show that the

24   revelation of that misrepresentation or omission was a substantial factor in causing a decline in the

25   security's price, thus creating an actual economic loss for the plaintiff.'"  Nuveen Mun. High

26   Income Opportunity Fund v. City of Alameda, 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting

27   McCage v. Ernst & Young, LLP, 494 F.3d 418, 425-26 (3d. Cir. 2007)).  However, "[t]he

28   fundamental inquiry before the Court remains whether there is 'a causal connection between the

material misrepresentation and the loss.'" Thomas v. Magnachip Semiconductor Corp., 167 F. Supp. 3d 1029, 1046 (N.D. Cal. 2016) (quoting Dura Pharm., 544 U.S. at 342).

## V.   DISCUSSION

Defendants move to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).  Defendants Wells Fargo, Carrie Tolstedt, Michael Loughlin, David Carroll, Avid Modjtabai, John Stumpf, John Shrewsberry, and Timothy Sloan move to dismiss Plaintiffs' claims against them under Section 10(b) and Rule 10b5, Section 20A, and Section 20(a).  Defendants James Strother, David Julian, Hope Hardison, and the Independent Directors move to dismiss the claims against them under Section 20(a).

### A.   Claims Under Section 10(b) and Rule 10b5

To survive a motion to dismiss under Section 10(b) and Rule 10b5, Plaintiffs must plausibly allege: (1) a material misrepresentation or omission made by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic law; and (6) loss causation.  Stoneridge Inv. Partners, LLC, 552 U.S. at 157.  Plaintiffs brought claims under §10(b) of the 1934 Act and SEC Rule 10b5 against Wells Fargo and the Speaking Defendants.[4]  ECF No. 72 at 122.  Defendants generally challenge whether the Complaint adequately alleges material misrepresentations or omissions made by them; scienter; and loss causation.  See ECF Nos. 135 at 9; 138 at 3; 139 at 2-3; 142 at 6; 145 at 6; 153 at 1; 156 at 2; 159 at 2.

#### 1.   Material and Misleading Statements

Defendants generally argue that Plaintiffs neither identify the specific statements that allegedly constitute actionable misrepresentations nor include specific facts indicating why those statements were false, misleading, or material.  ECF No. 135 at 15-16.

##### a.   Defendants Stumpf, Sloan, Shrewsberry, and Wells Fargo

This Court has previously held that many of the statements identified in the Complaint are

---

[4] Speaking Defendants include Stumpf, Sloan, Tolsted, Carroll, Modjtabai, Loughlin, and Shrewsberry.  ECF 72 at 133 n.211.

United States District Court
Northern District of California

sufficient to plead a material and misleading statement.  See Derivative Litigation Order at 15-24.

In the Derivative Litigation Order, the Court found that Plaintiffs plausibly alleged that

Defendants "made material and misleading statements through their participation in and approval

of Wells Fargo's public filings."  Id. at 18.  The Court noted that Defendants knew that Wells

Fargo accounts were being improperly created, but nonetheless made disclosures in SEC filings

that they knew were false or misleading at the time they were made.  Id.  The Plaintiffs in the

derivative action identified "specific statements in the SEC filings that they allege to be false or

misleading –namely, the cross-selling metrics that were reported in all quarterly and annual filings

and statements in those filings regarding Wells Fargo's success at cross-selling and its risk

management controls."  Id.

Here, the Plaintiffs identify many identical and similar statements, including the cross-

selling metrics reported in quarterly and annual filings.  See e.g. Compl. ¶¶ 101, 111, 120, 125.

They allege that Wells Fargo attributed its financial success to its cross-selling strategy.  The

Complaint lists statements in Wells Fargo's Annual Report, Form 10-Q and Form 10-k, touting

the success of Wells Fargo's cross-selling metrics and risk management controls.  See Id. ¶¶ 88-

179; see also ECF No. 175-1.[5]  For example, Wells Fargo made statements that its success rested

on having "achieved record cross-sell across the Company," Compl. ¶ 88, "[c]ross-sell of our

products is an important part of our strategy to achieve our vision to satisfy all our customers'

financial needs," id. ¶ 89, and "[o]ur "cross-selling" efforts to increase the number of products our

customers buy from us . . . is a key part of our growth strategy," id. ¶ 90.  The May 7, 2014 and

the August 6, 2014 Form 10-Q stated that the "cross–sell strategy, diversified business model and

the breadth of our geographic reach facilitate growth in both strong and weak economic cycles."

Id. ¶ 101, 114.[6]  Wells Fargo also frequently went on to specify the number of products per

---

[5] ECF No. 175-1 is an appendix to the Plaintiffs' opposition brief listing the alleged misrepresentations and omissions of Wells Fargo and the individual defendants.  Ordinarily, the Court frowns on appendices that serve to inflate a brief's size while keeping it technically within page limits.  Wells Fargo did the same thing, however, and the Court has considered both appendices.  ECF No. 135 at 36-54.  Future readers of this order should not assume that the Court condones the practice or that its decision to consider these materials sets a precedent.
[6] The May 7, 2014 Form 10-Q contained certifications signed by Defendants Stumpf and Sloan under the Sarbanes-Oxley (SOX) Act of 2002 that the financial information contained in the

customer or customer household as a measure of the strategy's success.  See, e.g., id. ¶¶ 89, 96, 106.

The Complaint also alleges why these statements were false and misleading.  See id. ¶¶ 110, 155, 179.  Plaintiffs allege that when Defendants made these statements, they "knew or deliberately disregarded that Wells Fargo materially and artificially inflated the cross-sell metrics that it reported to investors by including millions of accounts in those metrics that Wells Fargo either fabricated completely, or created by engaging in serious, pervasive sales misconduct."  Id. ¶¶ 110(b), 155(a).  The conduct of which Defendants were aware also included "the creation of fake personal identification or PIN numbers to open fake debit cards, and the use of phony email addresses to enroll customers in additional services that customers did not request via forgery or other illegal means – all culminating in fraudulent conduct that occurred on a massive scale."  Id. ¶ 179.  "Defendants [also] further knew or deliberately disregarded that the credit card penetration rates and growth metrics that they touted to investors rested, in part, on illusory credit cards and unsustainable growth that cross-selling misconduct generated."  Id.  The allegedly false statements were either made or signed by Defendants Stumpf, Sloan, and/or Shrewsberry.  ECF No. 175-1.

Thus, the Court finds that Plaintiffs have plausibly alleged that Defendants Stumpf, Sloan, and Shrewsberry made material and misleading statements through their participation in and approval of Wells Fargo's public filings.  See Howard v. Everex Sys., Inc., 228 F.3d 1057, 1061-63 (9th Cir. 2000).   The Court also finds that Plaintiffs have plausibly alleged Wells Fargo's public filings contain material, misleading statements.

### b.   Defendant Tolstedt

Defendant Carrie Tolstedt notes that the Complaint alleges that she made only two purported misstatements.  ECF No. 138 at 7 ("The Complaint attributes only two purported misstatements to her, and neither is actionable.").

The Complaint alleges:  (1) during Wells Fargo's May 20, 2014 Investor Day conference,

---

filings was true and did not omit material facts, and that the Company's internal disclosures were effective.  The August 6, 2014 10-Q Form contained substantially identical SOX certification signed by Defendants Stumpf and Shrewsberry.  Compl. ¶ 115.

Tolstedt stated that "[f]or example, we saw outstanding growth in our credit card business with retail bank credit card penetration up 30%," Compl. ¶104; during the same conference, Tolstedt stated, "the density and cross-sell model[s] drive revenue," id.; and (2) during a May 24, 2016 Investor Day conference, Tolstedt represented that the cross-sell strategy was meant to "satisfy[] customers' needs and help[] them succeed financially." Compl. ¶¶ 104, 166. Tolsted argues that these are corporate "puffing" and are not actionable misrepresentations. ECF No. 138 at 12.

As the Court noted in the derivative order, "the line between puffery and a misleading statement is often indistinct, and requires an analysis of the context in which the statements were made." Derivative Litigation Order at 22; Mulligan v. Impax Labs., Inc., 36 F. Supp. 3d 966 (N.D. Cal. 2014). "Even a statement of opinion or an expression of corporate optimism may be deemed actionable in certain circumstances because 'there is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts.'" Id. (quoting In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., 757 F. Supp. 2d 260, 310 (S.D.N.Y. 2010)).

In the Derivative Litigation Order, the Court considered Tolstedt's statements at the 2014 and 2016 Investor Day conferences to find that Plaintiffs adequately alleged that Toldstedt's statements were materially false or misleading when made. The Court reaches the same conclusion here. Tolstedt's representations must be considered in the context of Wells Fargo statements that described cross-selling as "the core of [its] vision-based strategy." Id. ¶ 13. "Defendants touted [their cross-sell] strategy throughout the Class Period, despite knowing that the Company's overly aggressive cross-sell targets, extreme sales environment and related incentive compensation programs were corrupting, rather than reinforcing, Wells Fargo's purported corporate values and cross-selling business model." Id. ¶ 3.

Plaintiffs allege that Tolstedt was, at all relevant times during the Class Period until her resignation, the Company's Senior Executive Vice President of Community Banking, where the fraudulent sales practices were alleged to have taken place. See Compl. ¶ 53, 110(e)(ii). Tolstedt also served on the Operating Committee, which was responsible for risk management. Id. ¶ 85. Plaintiffs allege that Tolstedt learned of the cross-selling misconduct by 2011 and that Tolstedt's

Community Banking unit "assembled a 'task force' to identify suspicions patterns in sales practice" in 2011.  Id. ¶¶ 110(e)(ii), 179(b).  Plaintiffs allege that in 2012 Wells Fargo assigned reports of unauthorized accounts to a risk management function in [Tolstedt's] Community Banking business.  Id. ¶ 110(e)(ii).  Given this context, Plaintiffs adequately allege that Tolstedt's statements about the success of Wells Fargo's cross selling and its commitment to providing value for customers were both material and false or misleading.

### c.    Defendants Carroll, Modjtabai, and Loughlin

Defendant David Carroll notes that Plaintiffs only identify three statements attributed to him in the Complaint.  ECF No. 142 at 10.  First, Plaintiffs identify his statements at a 2014 Investor Day: "[T]he culture of this company of getting the customer to the right place to the right product, it gives me huge optimism.  I can't think of anyone in our industry that converts relationships to cross-sell to top-line revenue growth better than Wells Fargo."  Compl. ¶ 107.  Carroll is correct that this statement is inactionable opinion.  "When valuing corporations, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers.  This mildly optimistic, subjective assessment hardly amounts to a securities violation."  Oregon Pub. Employees Ret. Fund v. Apollo Grp. Inc., 774 F.3d 598, 606 (9th Cir. 2014) (quoting In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010)) (internal ellipses omitted).

Next, Plaintiffs identify Carroll's statements at a 2015 Investor Day Conference:  "So I would tell you I think it is harder to do cross sell and do it well and stay within the good graces of the regulators which sort of gets to my comment on our focus on execution, doing things the right way."  Compl. ¶ 123.  The Court also finds this statement to be inactionable opinion.  See Or. Pub. Emps. Ret. Fund, 774 F.3d at 606 (finding statements beginning with "[w]e believe" are subjective puffing and would not induce the reliance of a reasonable investor.").

Finally, Plaintiffs point to Carroll's statements at a 2015 conference: "And the question that you may have been heading towards about any regulatory issues around sales practices or cross-selling or those kinds of things, as long as we stick to that plan-based, we've had terrific reaction from our regulators from a compliance standpoint on that."  Compl. ¶ 150.  Plaintiffs

allege that Carroll is and was during the Class Period the Company's Senior Executive Vice President in charge of the Company's Wealth, Brokerage and Retirement Group.  Compl. ¶ 55. Plaintiffs also allege that Carroll was a member of the Wells Fargo Operating Committee, which "was responsible for setting the tone at the top of the Company and establishing and reinforcing the Company's risk management culture."  Id.   Plaintiffs allege that the Operating Committee discussed the improper sales activities at least by 2013.  Id. ¶ 110(d).  And, Plaintiffs allege that an OCC investigation was active and notified in 2013, and that the OCC directed Wells Fargo to address weaknesses in compliance risk in early 2014.  Id. ¶110(e).

A reasonable investor would not consider an OCC investigation a "terrific reaction."  See Berson, 527 F. 3d at 958 ("a statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists") (internal citations omitted).  However, Carroll argues that this statement relates "to the WIM Group which is not alleged to have misstated cross-sell metrics."  ECF No. 142 at 18 n.7.  He argues that Plaintiffs did not adequately allege that this statement "had anything to do with what was happening in Community Banking (as opposed to the [Wealth and Investment Management ("WIM")] business he led)."  ECF No. 184 at 8.

Wells Fargo operates in three segments: Wholesale Banking, Wealth and Investment Management, and Community Banking.  Compl. ¶ 50.  Most of the fraudulent activity alleged in the Complaint took place in the Community Banking segment.  Id. at 175.  Plaintiffs have not adequately alleged that the OCC investigation or any other regulatory investigation concerned Carroll's group at the time of this statement.  Alternatively, Plaintiffs have not adequately alleged that Carroll's statement concerned the Community Banking segment.   Without additional allegations, Plaintiffs have not alleged that this is a materially false or misleading statement under the PSLRA's heightened pleading standards.

Defendant Avid Modjtabai notes that Plaintiffs identified only one alleged material misrepresentation – her statement at a May 2014 Investor Day Conference.  ECF No. 145 at 8. Modjtabai stated that Wells Fargo increased "cross-sell in the retail household base, as well as in the consumer lending consumer base . . . .  As a result, our portfolios grew . . . .  It is important to

note that we did not get this growth by compromising the quality of our portfolio."  Compl. ¶ 105. Similarly, Plaintiffs allege that Modjtabai was Head of Consumer Lending at all relevant times during the Class Period, as well as a member of the Operating Committee, which was responsible for "reinforcing the Company's risk management culture."  Id. ¶ 59.  And, Plaintiffs allege that the Operating Committee discussed the improper sales activities at least by 2013.  Id. ¶ 110(d).

On reply, Modjtabai argues that "[t]he very next sentence (omitted from the Complaint) of her statement indicates that Ms. Modjtabai was referring to the bank's loan portfolio: 'In fact, as you could see in the top part of this chart, our net charge-offs have been declining and they are now at or below pre-crisis levels for the majority – actually for all of our portfolios and new originations have been very strong'."  ECF No. 187 at 8-9 (citing Exhibit A at 22).  Modjtabai further argues that Plaintiffs acknowledged that her comment concerned the bank's loan portfolio in their opposition brief.  ECF No. 187 at 9.  See ECF No. 175 at 54 n.30.  Modjtabai argues that this context is significant because "the various regulatory and congressional investigations, company statements, and testimony upon which Complaint is based concern the bank's deposit and credit card accounts, not its loan portfolio."  ECF No. 187 at 9.

This Court generally disfavors arguments raised for the first time on reply.  See, e.g., TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp., No. 13-cv-02218-JST, 2013 WL 5228101, at *4 (N.D. Cal. Sept. 17, 2013) ("The Court does not consider new facts or argument made for the first time in a reply brief.") (citing Ass'n of Irritated Residents v. C & R Vanderham Dairy, 435 F. Supp. 2d 1078, 1089 (E.D. Cal. 2006)).  Nevertheless, the Court finds that Plaintiffs did not adequately allege that this statement was materially false or misleading.  However, the claims against Modjtabai under Section 10(b) will be dismissed without prejudice.  If Plaintiffs wish to respond to this argument, they can amend their pleadings to include additional allegations.

Plaintiffs also argue that the Speaking Defendants, including Carroll, Modjtabai, and Loughlin[7], are "liable for all of the alleged misstatements in the Complaint in Wells Fargo's releases and SEC filings because Plaintiffs allege that they had 'ultimate authority' over their

_____

[7] The Court will address Michael Loughlin's alleged statement in the following section.

contents.  ECF No. 175.  Plaintiffs cite <u>Janus Capital Grp., Inc. v. First Derivative Traders</u>, 564 U.S. 135 (2011).  The <u>Janus</u> Court held:

> For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it.  Without control, a person or entity can merely suggest what to say, not "make" a statement in its own right.  One who prepares or publishes a statement on behalf of another is not its maker.  And in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to whom it is attributed.  This rule might best be exemplified by the relationship between a speechwriter and a speaker.  Even when a speechwriter drafts a speech, the content is entirely within the control of the person who delivers it.  And it is the speaker who takes credit—or blame—for what is ultimately said.

<u>Janus</u>, 564 U.S. at 142–43.

In the "ordinary case," the alleged misstatements in Wells Fargo's release and SEC filings should be attributed to Wells Fargo as a company.  <u>See id.</u>  Plaintiffs must plead specific facts to show the individual defendants' ultimate authority over each of the alleged misstatements in Wells Fargo's releases and SEC filings.  <u>See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,</u> No. 15-md-02672 , 2017 WL 66281, at *18 (N.D. Cal. Jan. 4, 2017).  Plaintiffs allege that "because of their positions of control and authority as officers and/or directors [Defendants] were able to and did control the content of various SEC filings, news releases, and other public statements pertaining to the Company during the Class Period."  Compl. ¶ 80.  Plaintiffs allege that all the Officer Defendants, including Carroll, Modjtabai, and Loughlin, were provided with the documents alleged to be misleading "prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected."  Compl. ¶ 80.

The Court does not find this sufficient to plead "specific facts" that Carroll, Modjtabai, and Loughlin had ultimate authority over the alleged misstatements in Wells Fargo's releases and SEC filings.  Plaintiffs do not allege that Carroll, Modjtabai, and Loughlin signed any SEC filings.  <u>Cf.</u> <u>Thomas</u>, 167 F. Supp. 3d at 1047 (concluding that Plaintiffs adequately alleged that Defendants made false statements under <u>Janus</u> because Defendants signed the 2011 and 2012 Form-10Ks filed

United States District Court
Northern District of California

1   with the SEC, which included the allegedly false financial statements that ground Plaintiffs'

2   claims).  Plaintiffs fail to show how Carroll, Modjtabi, and Loughlin had "ultimate authority" over

3   various SEC filings, news releases, and other public statements when they do not even clearly

4   allege that the defendants were even provided with all of these documents before their issuance.

5   Further, Plaintiffs do not include specific facts indicating that Carroll, Modjtabai, and Loughlin

6   were provided with ultimate authority over various SEC filings, news releases, and other public

7   statements, as opposed to more senior Wells Fargo leadership.[8]

8        Thus, the Court concludes that Plaintiffs adequately allege facts showing that Defendants

9   Stumpf, Sloan, Tolstedt , Shrewsberry and Wells Fargo each made materially false or misleading

10  statements.  The Plaintiffs do not adequately allege a material false or misleading statement by

11  Defendants Carroll or Modjtabai.  Accordingly, the court will dismiss Plaintiffs' claims against

12  Carroll and Modjtabi under Section 10(b) without prejudice.

           **2.      Scienter**

14       Under the core operations doctrine, "[a]llegations regarding management's role may help

15  satisfy the PSLRA scienter requirement in three circumstances:"

> First, the allegations may be viewed holistically, along with other
> allegations in the complaint, to raise a strong inference of scienter
> under the Tellabs standard.  Second, the allegations "may
> independently satisfy the PSLRA where they are particular and
> suggest that defendants had actual access to the disputed
> information," . . . .  Third, in rare circumstances, such allegations
> may be sufficient, without accompanying particularized allegations,
> where the nature of the relevant fact is of such prominence that it
> would be "absurd" to suggest that management was without
> knowledge of the matter.

22  Reese, 747 F.3d at 575–76.

           **a.      Defendant Stumpf**

---

[8] The Janus Court declined to read into Rule 10b-5 "a theory of liability similar to—but broader in application than" the Congressionally established liability in § 20(a) for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws. Janus Capital, 564 U.S. at 146.

17

The Court has already held that some of the Plaintiffs' allegations support scienter.  See Shaev, 2017 WL 1735573, at *10-12.  Plaintiffs' point to "(i) the 2011 email to Stumpf warning him about fake accounts (¶110(b)(v)); (ii) Stumpf's sworn testimony that he knew about the fraud on a 'significant scale' since 2013 (¶196(a)); and (iii) the June 2015 supervisory letter from the OCC (¶155(e)(i))."  ECF No. 175 at 78.  Therefore, the Court finds that Plaintiffs have adequately alleged a strong inference of scienter as to Defendant Stumpf.

### b.    Defendants Sloan, Tolsdedt, Shrewsberry

This Court previously held that "Just as it is implausible that the Director Defendants were unaware of the account-creation scheme given the extent of the alleged fraud and the number of red flags, it is implausible that Wells Fargo's senior management, involved in the day-to-day operations of the bank and with greater access to the underlying cross-sell metrics and employee whistleblower complaints than independent board members, was unaware of the alleged fraud." In re Wells Fargo & Company Shareholder Derivative Litigation, No. 16-cv-05541 JST, at 22, 26. The Court also concluded that Plaintiffs in the derivative action established a strong inference of scienter under at least the third prong of the core operations doctrine.  Id. at 27.

The Complaint in this action contains many of the same allegations as the complaint in the derivative action.  Similarly in this action, Plaintiffs plead extensive facts showing the importance of cross-selling to Wells Fargo investors and others.  See, e.g., Compl. ¶¶ 88,89,90, 93,99, 101. And, Defendants Sloan, Tolsdedt, and Shrewsberry emphasized that Wells Fargo's cross-selling scheme was critical to the company's success and growth prospects.  See id. ¶¶ 103 (Shrewsberry characterizing Wells Fargo's cross-sell success as "legendary"); 104 (Tolsdedt stating that the cross-sell model "drives revenue"); 171 (Sloan describing how cross-selling satisfies customers and bring additional revenue to Wells Fargo).  Plaintiffs also allege facts showing that cross-selling was closely tracked at the company and individual branch level.  See id. ¶ 88, 89, 90, 110(b)(iii).  As this Court noted in the derivative order "[g]iven the 'prominence' of cross-selling in Wells Fargo's business, the close manner in which it was monitored, and the red flags from the employee complaints, the Los Angeles Times article, and the investigations by regulatory

agencies, 'it would be absurd to suggest that management was without knowledge of the matter."
Derivative Litigation Order at 28 (citing <u>Reese</u>, 747 F.3d at 575-76).

As in the Derivative Order, the Court here finds that Plaintiffs have adequately alleged
facts showing a strong inference of scienter as to Defendants Sloan, Tolstedt, and Shrewsberry.[9]

### c.    Defendant Wells Fargo

"In most cases, the most straightforward way to raise [an inference of scienter] for a
corporate defendant will be to plead it for an individual defendant.'" <u>In re NVIDIA Corp. Sec.
Litig.</u>, 768 F.3d 1046, 1063 (9th Cir. 2014) (internal citations omitted).  Here, Plaintiffs have
adequately alleged scienter for Defendants Stumpf, Sloan, Tolstedt, and Shrewsberry.  These
allegations are sufficient to raise an inference of scienter as to Wells Fargo.  <u>See</u> <u>Glazer Capital
Mgmt.,</u> LP v. Magistri, 549 F.3d 736, 743 (9th Cir. 2008).

### d.    Defendant Michael Loughlin

Defendant Michael Loughlin notes that Plaintiffs only identified one alleged material
misrepresentation, his statement at a May 2014 Investor Day.  ECF No. 139 at 14.  Loughlin stated
that "[e]scalating problems has always been a core strength at Wells Fargo. The fastest way to lose
your job at Wells Fargo is failure to escalate a problem."  Compl. ¶ 109 n.14.  Plaintiffs allege that
"it would later be revealed that the exact opposite was true because former employees reported
that escalating problems was a good way to get fired."  <u>Id.</u> ¶ 109 n.14.  Plaintiffs direct attention to
examples of wrongful terminations that have come to light in a 2011 email to Stumpf from a
terminated employee, 2016 and 2017 articles and news stories about the wrongful terminations,
and Senate hearing testimony.  <u>See</u> <u>Id.</u> ¶¶ 44, 206.

Loughlin argues that the Complaint "does not allege that at the time of the statement Mr.
Loughlin knew or believed that the statement was false."  ECF No. 139 at 15.  The Court finds
that Plaintiffs have not adequately alleged that Loughlin knew or believed the statement was false.
<u>See</u> <u>Tellabs</u>, 551 U.S. at 324 ("The strong inference required by the PSLRA "must be more than

---

[9] The Plaintiffs do not sufficiently allege that Defendants Carroll and  Modjtabai made a false or
misleading statement.  Therefore, it follows that Plaintiffs do not sufficiently allege scienter with
regard to these defendants.

United States District Court
Northern District of California

merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations.").  The claims against Loughlin under Section 10(b) are dismissed because Plaintiffs have not adequately alleged scienter.

### 3. Loss Causation

Defendants argue that Plaintiffs failed to show "that their losses were caused by disclosure that any of Defendant's previous alleged misstatements were false."  ECF No. 135 at 31. Plaintiffs allege that on September 8, 2010, investors learned of three related settlements with government entities imposing fines against Wells Fargo for previously undisclosed fraudulent sales practices.  Compl. ¶¶ 180-185.  Plaintiffs also allege that on September 13, 2016, Wells Fargo issued a news release that it would eliminate the sales goals and incentives that contributed to the fraudulent conduct.  Id. ¶ 189.  And Plaintiffs allege that on September 14, 2016, it was reported that the DOJ issued subpoenas to Wells Fargo regarding the fraudulent conduct.  Id. ¶ 191.  Finally, Plaintiffs allege that on September 20, 2016, Congress held a public hearing where CFPB's director and Defendant Stumpf testified about the fraudulent conduct at Wells Fargo.  Id. ¶¶ 194-96.  Plaintiffs argue that Wells Fargo stock experienced a statistically significant drop after each of these disclosures.  Id. 226, 229, 234, 238.  These allegations are sufficient to plead a claim. See In re Daou, 411 F.3d at 1026 (finding allegations that "Daou's stock fell precipitously after defendants began to reveal figures showing the company's true financial condition" sufficiently pled loss causation).

### B. Claims Under Section 20A Insider Trading

Plaintiffs assert claims under Section 20A of the 1934 Act against Defendants Carroll, Loughlin, Modjtabai, Sloan, Stumpf and Tolstedt.  Compl. ¶ 267.  Plaintiffs generally allege that these Defendants profited by selling Wells Fargo common stock while in possession of adverse, material non-public information about Wells Fargo.  Id. ¶ 268.

"Section 20A of the Exchange Act creates a private cause of action for 'contemporaneous'' insider trading.  To satisfy §20A, a plaintiff must plead (i) a predicate violation of the securities laws; and (2) facts showing that the trading activity of plaintiffs and defendants occur 'contemporaneously.'"  In re Countrywide Financial Corp. Sec. Litig., 588 F.Supp.2d 1132, 1074-

United States District Court
Northern District of California

75 (C.D.Cal.2008) (internal quotation marks and citations mitted).  Defendants argue that Plaintiffs have failed to adequately plead an underlying violation.  ECF No. 135 at 33.  The Court already concluded that Plaintiffs adequately alleged an underlying violation for Defendants Sloan, Stumpf, and Tolstedt so the Section 20A claims are not subject to dismissal on this basis.[10]  The Court has concluded that Plaintiffs have not adequately alleged an underlying violation for Defendants Carroll, Modjtabai, and Loughlin.  Therefore, Plaintiffs' claims against Carroll, Modjtabai, and Loughlin under Section 20A are dismissed without prejudice.

Defendants argue that the Section 20A claims fail for Carroll, Modjtabai, Stumpf, and Tolstedt because "the Complaint does not adequately plead any contemporaneous trades."  ECF No. 135 at 33.  Defendants Modjtabai and Stumpf sold Wells Fargo stock the trading day before Lead Plaintiff's purchase and Defendants Carroll and Tolstedt sold four and five trading days before Lead Plaintiff's purchases.[11]  Compl. ¶ 269.  Defendants concede there is presently "not a consensus in the Ninth Circuit regarding the contours of what constitutes a "contemporaneous" trade under Section 20A."  ECF No. 135 at 34.  However, Defendants urge the court to adopt a same-day trading requirement "because in an active market, one who did not trade on the same day as an insider could not have traded with the insider."  ECF No. 135 and 34.  Plaintiffs ask the Court to follow other courts in the Ninth Circuit who "have found that a plaintiff's purchases of securities occurring over a week after a defendant's sales are contemporaneous."  ECF No. 175 at 92.

This Court adopts the approach taken in Countrywide:  trading on the same day or the day after is "contemporaneous."  554 F. Supp. 2d at 120.  See also Thomas v. Magnachip

---

[10] Defendants also argue that the Section 20A claims fail because Plaintiffs have not alleged any facts with particularity "to show that any of the Defendants possessed material, non-public information at the time they traded or that they traded on that information."  ECF No. 135 at 33.  As Plaintiffs have adequately pleaded scienter for their Section 10(b) and Rule 10b-5 claims, the Section 20A claims are not subject to dismissal on this basis.  See In re VeriFone Holdings, Inc. Sec. Litig., 704 F.3d 694, 711 (9th Cir. 2012).

[11] Plaintiffs argue that Defendant Carroll sold five trading days before Lead Plaintiff's purchases but April 18, 2014 was a New York Stock Exchange Holiday.  See Diane Atler, Why the Stock Market Is Closed on Good Friday, WallStreetExaminer.com (April 17, 2014), http://wallstreetexaminer.com/2014/04/stock-market-closed-good-friday/ (last visited October 30, 2017).

United States District Court
Northern District of California

1    Semiconductor Corp., 167 F. Supp. 3d at 1049.  Therefore, Defendant Stumpf's Section 20A

2    claims are not subject to dismissal under this argument.

3        Defendant Tolstedt's Section 20A claims would be subject to dismissal because the

4    Complaint fails to plead any contemporaneous trades.  However, Plaintiffs argue that "the

5    Complaint has alleged that unnamed class members purchased shares contemporaneously with

6    Defendants' insider sales" and that "[s]uch allegations are sufficient in a class action context,

7    where numerous unnamed class members certainly traded on each of the days Defendants made

8    their insider sales."  ECF No. 175 at 92.  Plaintiffs rely on In re Openware Sys. Sec. Litig., 528 F.

9    Supp. 2d 236, 255-56 (S.D.N.Y. 2007) where the district court held that Plaintiffs adequately

10   alleged contemporanous trading because the Complaint alleged that members of the putative class

11   traded stock contemporaneously with the defendants.  Defendants point to other courts in the

12   Ninth Circuit who have rejected this argument.  See ECF Nos. 180 at 7; 184 at 13; 187 at 18.  This

13   Court agrees with another court in this district that  "the best way to proceed, for the purposes of

14   both Rule 23 class action requirements, and the contemporaneous trading requirement of Section

15   10(b) and Section 20A, is for plaintiffs to amend the Complaint to allege a subclass of plaintiffs

16   who traded contemporaneously" with Tolstedt.  In re Connetics Corp. Sec. Litig., No. C 07-

17   02940-SI, 2008 WL 3842938, at *14 (N.D. Cal. Aug. 14, 2008).  Therefore, the Section 20A

18   claims for insider trading are dismissed against Defendant Tolstedt, with leave to amend.

19       **C.    Section 20(a) Control Person Liability**

20       Section 20(a) of the Exchange Act extends liability for 10(b) violations to those who are

21   "controlling persons" of the alleged violations.  See Hollinger v. Titan Capital Corp., 914 F.2d

22   1564, 1572 (9th Cir. 1990).  In order to prove a prima facie case under section 20(a), a plaintiff

23   must prove: (1) a primary violation of federal securities laws, and (2) that the defendant exercised

24   "actual power or control" over the primary violator.  Howard, 228 F.3d at 1065.  "'Whether [the

25   defendant] is a controlling person is an intensely factual question, involving scrutiny of the

26   defendant's participation in the day-to-day affairs of the corporation and the defendant's power to

27   control corporate actions.'"  Id. at 1065 (quoting Kaplan v. Rose, 49 F.3d 1363, 1382 (9th Cir.

28   1994)).  "Although a person's being an officer or director does not create any presumption of

United States District Court
Northern District of California

22

United States District Court
Northern District of California

control, it is a sort of red light." <u>Paracor Finance, Inc. v. General Elec. Capital Corp.</u>, 96 F.3d 1151, 1163 (9th Cir. 1996) (internal quotation marks and citations omitted).

Since Howard, "[c]ourts have found general allegations concerning an individual's title and responsibilities to be sufficient to establish control at the motion to dismiss stage.  <u>In re Energy Recovery Inc. Sec. Litig.</u>, No. 15-CV-00265-EMC, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016) (internal citations and quotation marks omitted).  <u>See also</u> <u>In re Cylink Sec. Litig.</u>, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001) (finding Plaintiffs sufficiently alleged control with allegations that the individual defendants "by virtue of their executive and managerial positions had the power to control and influence").

Plaintiffs bring Section 20(a) claims against all Defendants.  Plaintiffs allege that Defendant Stumpf, the other Officer Defendants, and the other Director Defendants acted as controlling persons over Wells Fargo within the meaning of Section20(a) of the 1934 Act.  Compl. ¶¶ 273-275.  Plaintiffs also allege that Wells Fargo controlled Stumpf and the other Officer and Director Defendants, and is a controlling person of those defendants within the meaning of §20(a) of the 1934 Act.  Compl. ¶ 276.

### 1.    Defendant Stumpf

Defendant Stumpf challenges the 20(a) claims on the ground that Plaintiffs failed to plead a Section 10(b) claim.  ECF No. 134 at 34; ECF No. 153 at 21.  Stumpf does not challenge his status as a controlling person.[12]  <u>Id.</u>  The Court has already addressed Stumpf's arguments that Plaintiffs have failed to plead a primary violation.  Thus, the motion to dismiss Section 20(a) claims against Stumpf is denied.

### 2.    Defendant Wells Fargo

Wells Fargo does not challenge that it exercised actual power or control over Stumpf and the Officer and Director Defendants.  See ECF No. 135 at 34.  The Court has already addressed

---

[12] In Wells Fargo's Motion to Dismiss, it argued that "Plaintiffs also fail to plead the requisite control, as explained in the motions to dismiss filed by the individual defendants."  ECF No. 135 at 34 n.6.  However, in the individual motion to dismiss filed by Stumpf, he only argues that "[p]laintiffs' failure to plead a Section 10(b) claim necessarily compels dismissal of Plaintiffs' claims against Mr. Stumpf under Sections 20A and 20(a) of the Exchange Act."  ECF No. 153 at 21.

1    Wells Fargo's argument that Plaintiffs failed to allege any primary violation of the securities laws

2    under Section 10(b).  Thus, the motion to dismiss Section 20(a) claims against Wells Fargo is

3    denied.

4                      **3.      The Remaining Defendants**

5              The Court has already addressed the argument that Plaintiffs failed to allege any primary

6    violation of securities law under Section 10(b).  Thus, the Court will only consider whether the

7    remaining Defendants exercised "actual power or control" over Wells Fargo.  Among other things,

8    Plaintiffs allege that "the Officer and Director Defendants participated in the drafting, preparation

9    and/or approval of the various SEC filings, shareholder and investor reports and other publicly

10   disseminated communications complained of herein."  Compl. ¶ 80.  Plaintiffs further allege that

11   " [t]he Director Defendants, in particular, due to their membership on Board committee(s) whose

12   charge was to oversee the implementation of controls over risk, compensation, human resources

13   and governance, had the power and ability to control the Company's conduct, reputation and

14   disclosures by virtue of the charters governing each committee."  Id. ¶ 82.  And, that through their

15   participation in the Operating Committee, the Officer Defendants "met every Monday,"

16   "reportedly managed all of the Company's business lines" and were responsible for "setting the

17   tone at the top with regard to the Company's risk management culture, promoting proactive risk

18   management, and ongoing risk training."  Id. ¶ 85.

19             Plaintiffs argue that "Rule 8(a)'s notice pleading standard applies to the "control" element

20   of Plaintiffs' claim."  ECF No. 175 at 93.  Defendants argue that "both elements of Plaintiffs'

21   Section 20(a) claim are governed by the stringent pleading standards of Federal Rule of Civil

22   Procedure ("Rule") 9(b)."  ECF No. 147 at 9.

23             Control person liability exists "irrespective of the control person's scienter."  Id.  See

24   Hollinger, 914 F.2d at 1575 ("[W]e hold that a plaintiff is not required to show 'culpable

25   participation' to establish that a broker-dealer was a controlling person . . . .  The statute does not

26   place such a burden on the plaintiff.").  However, there is a split of authority among the courts in

27   the Ninth Circuit, and within the Northern District of California, on whether Plaintiffs must plead

28   actual power or control over the primary violator under Federal Rule of Civil Procedure 8 or

United States District Court
Northern District of California

1    Federal Rule of Civil Procedure 9(b).  Compare Howard v. Hui, No. C 92-3742-CRB, 2001 WL

2    1159780, at *4 (N.D. Cal. Sept. 24, 2001) ("Plaintiff's section 20(a) claim is an allegation of fraud.

3    Allegations of fraud must be pled with particularity.") with Jackson v. Fischer, 931 F. Supp. 2d

4    1049, 1073 (N.D. Cal. 2013) ("pleading § 20 claims in conformance with Rule 8 is sufficient").

5        This Court agrees with the view that Rule 9(b) "requires only that circumstances

6    constituting fraud . . . shall be stated with particularity.  The control exerted by [defendants] is not

7    a circumstance that constitutes fraud.  Plaintiff is only required to assert fraud with particularly as

8    to the primary violations."  Siemers v. Wells Fargo & Co., No. C 05-04518 WHA, 2006 WL

9    2355411, at *14 (N.D. Cal. Aug. 14, 2006).

10       Therefore, the Court finds that the Plaintiffs have adequately pleaded control under Rule

11   8's lower pleading standards.  Plaintiffs adequately allege that Defendants had the power to

12   control and influence by virtue of their executive and managerial positions.

**CONCLUSION**

13

14       Plaintiffs' claims against Defendants Carroll, Modjtabai, and Loughlin under Section 10(b)

15   and 20A, and Plaintiffs' claims against Defendant Tolstedt under Section 20A, are dismissed

16   without prejudice.  In all other respects, the motions are denied.  Plaintiffs may amend their

17   complaint by March 21, 2018 to cure the deficiencies identified in this Order.  If no amended

18   complaint is filed, the Court will proceed on the remaining claims.

19       **IT IS SO ORDERED.**

20   Dated:  February 27, 2018

21                                                        _____

22                                                        JON S. TIGAR

23                                                        United States District Judge

24

25

26

27

28

25