UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY HEFLER, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>WELLS FARGO & COMPANY, et al.,<br><br>    Defendants. | Case No. 16-cv-05479-JST<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING MOTION TO SEAL**<br><br>Re: ECF Nos. 225, 226 |

Before the Court is Plaintiffs' unopposed motion for preliminary approval of a class action settlement and class certification. ECF No. 225. In connection with the motion, the parties have also filed a motion to file under seal a confidential supplemental agreement. ECF No. 226. The Court will grant both motions.

## I. BACKGROUND

### A. The Parties and Claims

Plaintiffs bring this federal securities class action against Wells Fargo & Company and several of its officers and directors for violations of sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5. *See* ECF No. 207.

Lead Plaintiff Union Asset Management Holding, AG ("Union") brings these claims "on behalf of all persons who purchased Wells Fargo common stock between February 26, 2014 and September 20, 2016, inclusive (the 'Class Period')." ECF No. 207 ¶ 2.

The substance of Union's claims is set forth in greater detail in the Court's prior order granting in part and denying in part Defendants' motions to dismiss. *See* ECF No. 205. In short, Union alleges that Defendants made "repeated misrepresentations and omissions about a core

element of Wells Fargo's business: its acclaimed 'cross-selling' business model," ECF No. 207 ¶ 3, artificially inflating Wells Fargo's stock price, *id.* ¶ 261. Union seeks damages related to this inflation of Wells Fargo's stock price and its subsequent decline when the truth about Wells Fargo's practices came to light through a series of disclosures in September 2016. *See, e.g.*, *id.* ¶¶ 262, 270.

### B. Procedural History

Plaintiff Gary Hefler filed the initial complaint in this action on September 26, 2016. ECF No. 1. Several related lawsuits based on the same misconduct were subsequently filed against Wells Fargo. ECF Nos. 8, 12, 14, 18, 47, 55, 222. On January 5, 2017, the Court granted Union's motion to consolidate *Hefler v. Wells Fargo & Co.*, Case No. 16-cv-5479, with *Klein v. Wells Fargo & Co.*, Case No. 16-cv-5513, and to appoint Union as Lead Plaintiff, Motley Rice LLC as Lead Counsel, and Robbins Geller Rudman & Dowd LLP as Liaison Counsel. ECF No. 58. The Court later granted Union's motion to substitute Bernstein Litowitz Berger & Grossman LLP ("Bernstein") as Lead Counsel. ECF No. 95.

Wells Fargo and the Individual Defendants filed a set of eight motions to dismiss, which the Court granted in part and denied in part on February 27, 2018. *See* ECF No. 205. Shortly thereafter, Union filed the operative second amended class action complaint. ECF No. 207.

On July 31, 2018, Union filed an unopposed motion for preliminary approval of a settlement, ECF No. 225, and the parties filed a motion to file under seal a confidential supplemental agreement to the proposed settlement, ECF No. 226.

## II. CLASS CERTIFICATION

As part of its preliminary approval motion, Union requests certification for the following class for settlement purposes:

> [A]ll persons and entities who purchased Wells Fargo common stock from February 26, 2014 through September 20, 2016, inclusive. Excluded from the Settlement Class are: (i) Defendants; (ii) Immediate Family Members of any Individual Defendant; (iii) any person who was a director or member of the Operating Committee of Wells Fargo during the Class Period and their Immediate Family Members; (iv) any parent, subsidiary or affiliate of Wells Fargo; (v) any firm, trust, corporation, or other entity in which Defendants or any other excluded person or entity has, or had

2

> during the Class Period, a controlling interest; and (vi) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of any such excluded persons or entities. Notwithstanding the foregoing exclusions, no Investment Vehicle shall be excluded from the Settlement Class. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

ECF No. 225-1 at 13; *see also* ECF No. 225 at 23. Union further requests that the Court appoint Union and four other Named Plaintiffs – Gary Hefler, Marcelo Mizuki, Guy Solomonov, and City of Hialeah Employees' Retirement System – as class representatives and Lead Counsel as class counsel. ECF No. 225 at 27; *see also* ECF No. 225-1 at 11.

### A. Legal Standard

Class certification under Federal Rule of Civil Procedure 23 is a two-step process. First, a plaintiff must demonstrate that the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy. "Class certification is proper only if the trial court has concluded, after a 'rigorous analysis,' that Rule 23(a) has been satisfied." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542-43 (9th Cir. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).

Second, a plaintiff must establish that the action meets one of the bases for certification in Rule 23(b). Union relies on Rule 23(b)(3) and must therefore establish that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When determining whether to certify a class for settlement purposes, a court must pay "heightened" attention to the requirements of Rule 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). "Such attention is of vital importance, for a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold." *Id.*

### B. Analysis

#### 1. Rule 23(a)(1): Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

3

impracticable." Fed. R. Civ. P. 23(a)(1). Union asserts that there were more than 5 billion shares of Wells Fargo common stock outstanding during the Class Period, with an average daily trading volume of over 16.9 million shares. ECF No. 225 at 24. Therefore, Union reasons, the proposed class "consists of thousands (or tens of thousands) of investors." *Id.* at 24.

The Court concludes that Union has satisfied its burden to show that the number of putative class members is sufficiently numerous that their joinder would be impracticable.

### 2. Rule 23(a)(2): Commonality

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one "capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. For the purposes of Rule 23(a)(2), "even a single common question" is sufficient. *Id.* at 359 (quotation marks and internal alterations omitted).

Union asserts that commonality exists because questions of law or fact common to the putative class "include: (i) whether Defendants violated the Exchange Act; (ii) whether Defendants omitted or misrepresented material facts in public statements and filings with the [Securities and Exchange Commission]; (iii) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (iv) whether the price of Wells Fargo common stock was artificially inflated; and (v) the extent of damage sustained by Settlement Class Members, and the appropriate measure of damages." ECF No. 225 at 24.

The Court agrees that this requirement is met. Defendants made the same alleged statements to the entire putative class, as members of the investing public. Moreover, whether Defendants' statements and subsequent corrective disclosures had the alleged impact on the price of Wells Fargo's common stock can be jointly resolved as to all class members.

### 3. Rule 23(a)(3): Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the

4

class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

The Court concludes that the proposed class representatives' claims are typical of the class claims. All members of the proposed class, including Union and the other Named Plaintiffs, have allegedly been injured by the same conduct: financial losses due to purchasing Wells Fargo stock whose price was artificially inflated by Defendants' conduct and that subsequently declined when that conduct was disclosed.

### 4. Rule 23(a)(4): Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This "requires that two questions be addressed: (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000).

The record contains no evidence suggesting that the proposed class representatives have a conflict of interest with other class members. Union and the Named Plaintiffs share a common claim with the class, seek the same relief as they do, and have every incentive to vigorously prosecute the action on behalf of the class. Moreover, in its role as Lead Plaintiff, Union has "retained counsel highly experienced in securities class action litigation," and "who have successfully prosecuted many securities and other complex class actions." ECF No. 225 at 26; *see also* ECF No. 94-1. The Court finds that the proposed class representatives and Lead Counsel have prosecuted and will continue to prosecute this action vigorously on behalf of the class. The adequacy requirement is therefore satisfied.

### 5. Rule 23(b)(3): Predominance and Superiority

Finally, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Courts must consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1778 (2d ed. 1986)). Similarly, "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

The Court concludes that common questions of law and fact predominate here. Whether Defendants' statements were false, material, made with the requisite scienter, and caused the class members' losses are significant aspects of the case and susceptible to common proof. *See also Amchem Prods.*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws.").

Moreover, a class action is a superior method for adjudicating the controversy. The class likely consists of thousands of investors and resolving these disputes in a single class action would be far more efficient than litigating their cases individually. Nor are there any reasons why it would be undesirable to litigate the case in this forum. The Court therefore finds that the proposed class satisfies the requirements of Rule 23(b)(3).

Because the proposed class meets all of the requirements of Rules 23(a) and 23(b)(3), the

Court conditionally certifies the proposed class for purposes of settlement.

### C. Appointment of Class Representative and Class Counsel

As discussed above, the Court finds that Union, Hefler, Mizuki, Solomonov, and the City of Hialeah Employees' Retirement System meet the commonality, typicality, and adequacy requirements of Rule 23(a). The Court therefore appoints them as class representatives.

When a court certifies a class, it must consider the following when appointing class counsel:

> (i) the work counsel has done in identifying or investigating potential claims in the action;
>
> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>
> (iii) counsel's knowledge of the applicable law; and
>
> (iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). The court may also "consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). Since taking over as Lead Counsel, *see* ECF No. 95, Bernstein obtained a good understanding of the issues and vigorously prosecuted this action by litigating this case through dispositive motions, the initial stages of formal discovery, and formal mediation, *see* ECF No. 205; ECF No. 225 at 13-14. Moreover, as noted above, Bernstein has significant prior experience in litigating securities fraud cases, including class actions. ECF No. 94-1; ECF No. 225 at 26. For these reasons, the Court will appoint Bernstein as class counsel pursuant to Federal Rule of Civil Procedure 23(g).

### III. MOTION FOR PRELIMINARY APPROVAL

#### A. Terms of the Settlement

The proposed settlement agreement ("Settlement") resolves claims between Wells Fargo and the class, as defined above. *See* ECF No. 225-1 at 13.

Under the Settlement, Wells Fargo has agreed to pay $480 million dollars (the "Settlement Amount") into the Settlement Fund within fifteen days of the entry of a preliminary approval order. *Id.* at 13, 17. The following amounts will be subtracted from the Settlement Amount: (1) taxes; (2) notice costs; (3) attorneys' fees and expenses; and (4) service awards to the class

representatives. *Id.* at 17; ECF No. 225 at 33.

Pursuant to the proposed plan of allocation, class members who submit timely claims will receive payments on a pro rata basis based on the date(s) class members purchased and sold Wells Fargo common stock, as well as the total number and amount of claims filed. ECF No. 225-1 at 75–78. To calculate the amount that will be paid to each class member, the Claims Administrator[1] will determine each claim's share of the Settlement Fund proceeds based upon the claim's recognized loss. *Id.* at 75–76. The recognized loss calculation will be "based primarily on the difference in the amount of alleged artificial inflation in the prices of Wells Fargo common stock at the time of purchase and at the time of sale or the difference between the actual purchase price and the sale price." *Id.* at 75. Before deducting any costs or attorneys' fees, the Settlement represents an average recovery of $0.44 per eligible share. *Id.* at 62. After deductions, the recovery will be approximately $0.35 per share. *See id.* at 64 ("The estimated average cost per affected share of Wells Fargo common stock, if the Court approves Lead Counsel's fee and expense application, is $0.09 per share."). No distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00. *Id.* at 78. Nine months after the initial distribution, the Claims Administrator will make additional re-distributions to class members if it is cost effective to do so. *Id.* Any Settlement Funds not distributed to the class will be paid to a cy pres recipient: the Investor Protection Trust. *Id.*

In exchange for the settlement payment, Plaintiffs agree to release the following:

> [A]ny and all claims, debts, demands, rights or causes of action or liabilities of every nature and description (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any other costs, expenses or liability whatsoever), whether known claims or Unknown Claims, whether arising under federal, state, local, foreign, statutory or common law or any other law, rule or regulation, whether fixed or contingent, accrued or un-accrued, liquidated or unliquidated, at law or in equity, matured or unmatured, whether class or individual in nature, that both (i) concern, arise out of, relate to, or are based upon the purchase, acquisition, or ownership of Wells Fargo common stock during the Class Period and (ii) were asserted or could have been asserted in this Action by Lead Plaintiff or any other member of the

---

[1] Union proposes that Epiq Class Action & Mass Tort Solutions serve as the Claims Administrator. ECF No. 225 at 30.

8

> Settlement Class against any of the Defendants' Releasees that arise out of, relate to, or are based upon any of the allegations, circumstances, events, transactions, facts, matters, occurrences, statements, representations or omissions involved, set forth, or referred to in the Complaint, except for claims relating to the enforcement of the Settlement.

*Id.* at 12. The Settlement does not, however, cover "the claims asserted in any derivative or ERISA action against any of the Defendants." *Id.* at 12–13.

In order to inform class members of the Settlement, Union proposes the following notice plan. Within fifteen days of the Court's preliminary approval order, ECF No. 225 at 24, the Claims Administrator will begin "mail[ing] the Notice and Claim Form to those members of the Settlement Class as may be identified through reasonable effort." ECF No. 225-1 at 21; *see also* ECF No. 225-1 at 61 (Proposed Notice); ECF No. 225-1 at 86 (Claim Form). To facilitate this process, Wells Fargo will provide the Claims Administrator with "Wells Fargo's shareholder lists (consisting of names and addresses) of the holders of Wells Fargo common stock during the Class Period." *Id.* at 21. No more than twenty-five days after preliminary approval, the Claims Administrator will also publish the Summary Notice in the *Wall Street Journal* and the *Los Angeles Times*, and transmit it over the *PR Newswire*. ECF No. 225 at 33; ECF No. 225-1 at 51; ECF No. 225-1 at 97 (Summary Notice). Union estimates that the Claims Administrator's administrative costs will be $2.5 million, which it proposes to pay from the Settlement Fund. ECF No. 225 at 31.

Lead Counsel also intends to seek attorneys' fees for all Named Plaintiffs' counsel in an amount not to exceed twenty percent of the Settlement Fund, an award of litigation expenses of no more than $750,000, and an award to the class representatives not to exceed an aggregate total of $50,000. ECF No. 225-1 at 63; *see also* ECF No. 225 at 32–33.

Wells Fargo reserves the right to terminate the Settlement "in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Wells Fargo's confidential supplemental agreement with Lead Plaintiff." ECF No. 225-1 at 28.

### B. Motion to File Under Seal

A party seeking to seal a document filed with the court must (1) comply with Civil Local

Rule 79–5; and (2) rebut a "strong presumption in favor of access" that applies to all documents other than grand jury transcripts or pre-indictment warrant materials. *Kamakana v. City and County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (citation omitted).

With respect to the first prong, Local Rule 79-5 requires, as a threshold, a request that (1) "establishes that the document, or portions thereof, are privileged, protectable as a trade secret or otherwise entitled to protection under the law"; and (2) is "narrowly tailored to seek sealing only of sealable material." Civil L.R. 79-5(b). An administrative motion to seal must also fulfill the requirements of Local Rule 79-5(d). "Reference to a stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civil L.R. 79-5(d)(1)(A).

With respect to the second prong, the showing required for overcoming the strong presumption of access depends on the type of motion to which the document is attached. "[A] 'compelling reasons' standard applies to most judicial records. This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citation omitted) (quoting *Kamakana*, 447 F.3d at 1178). To overcome this strong presumption, the party seeking to seal a judicial record must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure." *Kamakana*, 447 F.3d at 1178-79 (internal quotation marks and citations omitted).

On the other hand, records attached to motions that are only "tangentially related to the merits of a case" are not subject to the strong presumption of access. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016). Instead, a party need only make a showing under the good cause standard of Rule 26(c) to justify the sealing of the materials. *Id.* at 1097. A court may, for good cause, keep documents confidential "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c).

Here, the parties seek to file under seal a confidential supplemental agreement as part of a class action settlement for which they seek preliminary approval. Preliminary approval of a settlement is an issue more than tangentially related to the merits of the case, and therefore the

"compelling reasons" standard applies. *See Kiersey v. eBay, Inc*, No. 12-CV-01200-JST, 2013 WL 5609318, at *2 (N.D. Cal. Oct. 11, 2013) ("[A] motion seeking the Court's preliminary approval of the settlement of the case may be effectively dispositive.").

"'[C]ompelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets." *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). The *Nixon* court also noted that the "common-law right of inspection has bowed before the power of a court to insure that its records" are not used as "sources of business information that might harm a litigant's competitive standing." 435 U.S. at 598.

The parties' motion to file under seal contends that the conditions under which Wells Fargo may terminate the Settlement, in particular the threshold number of opt-out exclusions by class members, must remain confidential in order "to avoid the risk that one or more shareholders might use this knowledge to insist on a higher payout for themselves by threatening to break up the Settlement." ECF No. 226 at 3.

The Court agrees. There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts. The parties cite to several other courts that have reached a similar conclusion. *Id.* (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) and other cases); *see also Thomas v. MagnaChip Semiconductor Corp.*, 14-CV-01160, 2017 WL 4750628, at *5 (N.D. Cal. Oct. 20, 2017). Accordingly, the motion to file under seal is granted.

### C. Preliminary Settlement Approval

#### 1. Legal Standard

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Courts generally employ a two-step process in evaluating a class action settlement. First, courts make a

11

"preliminary determination" concerning the merits of the settlement and, if the class action has settled prior to class certification, the propriety of certifying the class. *See* Manual for Complex Litigation, Fourth ("MCL, 4th") § 21.632 (FJC 2004). "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *City of Seattle*, 955 F.2d at 1276 (citation omitted). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The Court's task at the preliminary approval stage is to determine whether the settlement falls "within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citation omitted); *see also* MCL, 4th § 21.632 (explaining that courts "must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing."). Second, courts must hold a hearing pursuant to Rule 23(e)(2) to make a final determination of whether the settlement is "fair, reasonable, and adequate."

Preliminary approval of a settlement is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware*, 484 F. Supp. 2d at 1079 (citation omitted). The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class. *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion."). To assess a settlement proposal, courts must balance a number of factors:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed

12

settlement.

*Id.* at 1026 (citations omitted). The proposed settlement must be "taken as a whole, rather than the individual component parts," in the examination for overall fairness. *Id.* Courts do not have the ability to "delete, modify, or substitute certain provisions"; the settlement "must stand or fall in its entirety." *Id.* (citation omitted).

### 2. Analysis

#### a. Non-Collusive Negotiations

Because the Settlement was reached prior to class certification, "there is an even greater potential for a breach of fiduciary duty owed the class during settlement," and the Court must examine the risk of collusion with "an even higher level of scrutiny for evidence of collusion or other conflicts of interest." *In re Bluetooth*, 654 F.3d at 946. Signs of collusion include: (1) a disproportionate distribution of the settlement fund to counsel; (2) negotiation of a "clear sailing provision"; and (3) an arrangement for funds not awarded to revert to defendant rather than to be added to the settlement fund. *Id.* at 947. If "multiple indicia of possible implicit collusion" are present, a district court has a "special 'obligat[ion] to assure itself that the fees awarded in the agreement were not unreasonably high.'" *Id.* (quoting *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

As to the first *Bluetooth* factor, the Ninth Circuit has set a "benchmark" fee award at 25 percent of the recovery obtained for common fund settlements such as this one. *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990). Class counsel intends to seek attorneys' fees for all Named Plaintiffs' counsel in the amount of 20 percent of the total Settlement Fund. ECF No. 225 at 32. For the purposes of evaluating collusive behavior, the Court finds that 20 percent is not a disproportionate amount.[2]

---

[2] Plaintiffs' motion for attorneys' fees is not yet before the Court. However, Union estimates that the award would represent a multiplier on counsel's lodestar of almost four. ECF No. 225 at 32. Given that such a multiplier is at the upper end of the range of multipliers commonly awarded in common fund cases, *see Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 & n.6 (9th Cir. 2002), Plaintiffs ensure that the motion for attorneys' fees provides appropriate detail and documentation. The parties are also invited to consider this Court's recent opinion in another class action concerning the relationship between total recovery by the class and the appropriate percentage of that recovery to be allocated to attorneys' fees. *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST,

13

As to the second factor, a clear sailing provision is generally not a sign of possible collusion in cases where the attorneys' fees will be sought from the same common fund as the class settlement. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sept. 2, 2015). In such cases, a clear sailing provision is of little value because settling defendants already have little incentive to oppose a subsequent fee motion where it will not affect the amount of defendants' liability. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009). Therefore, a court can reasonably conclude that plaintiffs' counsel is unlikely to have compromised the class's interests in order to secure such an agreement. In any event, the Settlement here contains no clear sailing provision. *Cf.* ECF No. 225-1 at 19-20.

Third, no amount in the Settlement Fund will revert to Defendants. ECF No. 225-1 at 78.

Finally, the Court finds no other signs of collusion.

After considering the *In re Bluetooth* factors, and in light of the fact that the Settlement was reached after the parties engaged in motion practice and participated in multiple days of formal mediation, the Court concludes that the negotiations and agreement were non-collusive.

### b. Strength of Plaintiffs' Case: Risk, Expense, Complexity, and Likely Duration of Further Litigation

The risk, expense, complexity, and likely duration of further litigation also weigh in favor of preliminary approval. While Plaintiffs believe their allegations have merit, they identify numerous significant obstacles in surviving summary judgment and ultimately prevailing on their claims at trial. ECF No. 225 at 20-22. For instance, Plaintiffs would have to prove that the Individual Defendants' alleged misstatements or omissions were knowingly or recklessly false. *Id.* at 20. Moreover, Plaintiffs highlight difficulties in proving "that the price declines on many of Plaintiffs' alleged corrective disclosure dates were . . . due to revelation of the alleged misstatements or omissions." ECF No. 225 at 21; *see also Hayes v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016) ("Proving loss causation, in particular, would have required expensive, complex, and risky expert testimony."). Litigating this case through trial would also substantially delay the ability of class members to

---

2018 WL 4030558, at *4-5 (N.D. Cal. Aug. 23, 2018).

obtain relief.

### c. Amount Offered in Settlement

To evaluate the adequacy of the settlement amount, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. But "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n of City & County of S.F.*, 688 F.2d 615, 628 (9th Cir. 1982).

Here, the $480 million fund achieves a good result for the class. Union's expert calculates that the maximum potential damages the class could have won at trial ranged from $353.1 million to $3.063 billion, depending on which "corrective disclosures were accepted as demonstrating loss causation." ECF No. 225-2 ¶ 34. Even accepting the high estimate that the class is settling claims worth $3.063 billion, the Settlement provides the class with a greater than 15 percent recovery. *Id.* ¶ 36. This recovery is higher than recoveries achieved in other securities fraud class actions of similar size (over $1 billion in estimated damages). *Id.* (citing Cornerstone Research, Securities Class Action Settlements, 2017 Review and Analysis, at 8 (2018)). Accordingly, the amount of the Settlement also weighs in favor of approval.

### d. Extent of Discovery Completed and the State of the Proceedings

While the parties reached a settlement "only at the outset of formal discovery," Lead Counsel had already "obtained and reviewed millions of pages of documents belonging to 65 Wells Fargo custodians, including every Individual Defendant as well as other of the Company's most relevant senior executives and employees." ECF No. 225 at 18. Given that the parties litigated this case through dispositive motions, *see* ECF No. 205, and participated in multiple formal mediation sessions, the Court is satisfied that they possessed "sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (citation omitted). This factor likewise weighs in favor of approval.

### e. Experience and Views of Counsel

As noted earlier, Lead Counsel has extensive experience in litigating class action and securities fraud cases. ECF No. 94-1. That counsel advocates in favor of this Settlement weighs

in favor of its approval.[3]

### f. Reaction of Class Members to the Proposed Settlement

The Court will wait until the fairness hearing to determine the reaction of the class members to the Settlement.

### g. Preferential Treatment

Under this factor, the Court looks at whether the settlement agreement provides preferential treatment to any class member. Under the Settlement, class members who submit timely claims will receive payments on a pro rata basis based on the date(s) class members purchased and sold Wells Fargo shares as well as the total number and amount of claims filed. ECF No. 225-1 at 75-78. As discussed in greater depth under the allocation plan, that some class members will receive a larger payment than others based on the number of shares they held and when those shares were bought and sold makes sense in this case and does not constitute improper preferential treatment.

Lead Counsel also intends to seek service awards for the class representatives, up to an aggregate total of $50,000, for their contributions to the case. ECF No. 225 at 33. The Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not necessarily render a settlement unfair or unreasonable. *See, e.g.*, *Rodriguez*, 563 F.3d at 958-69. The Court notes, however, that an average award of $10,000 for the five class representatives is double the presumptively reasonable amount of $5,000 for such awards. *See Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016) ("Several courts in this District have indicated that incentive payments of $10,000 or $25,000 are quite high and /or that, as a general matter, $5,000 is a reasonable amount." (quoting *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)). Moreover, the Private Securities Litigation Reform Act of 1995 (PSLRA) limits any

---

[3] The Court considers this factor, as it must, but gives it little weight. "[A]lthough a court might give weight to the fact that counsel for the class or the defendant favors the settlement, the court should keep in mind that the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement." *Principles of the Law of Aggregate Litigation* § 3.05 cmt. a (Am. Law. Inst. 2010).

16

such award to "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. § 78u-4(a)(4).

The Court need not resolve the specific amount of the service award at this time as the matter will be conclusively determined at the Final Fairness and Approval Hearing. However, Plaintiffs should be mindful of addressing these issues and providing appropriate detail and documentation in connection with their motion for service awards.

### h. The Presence of Obvious Deficiencies

The Court has reviewed the Settlement and did not find any obvious deficiencies. To the extent any objector calls attention to any such deficiency, the Court will consider it at the fairness hearing.

### i. Fairness of Supplement Agreement

The Court, having granted the motion to seal, must separately review the fairness of the confidential supplemental agreement. The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 948. Having reviewed the supplemental agreement under seal, the Court concludes that the termination provision is fair and reasonable.

## D. Notice Plan

The Court must separately evaluate the proposed notice procedure. Under Federal Rule of Civil Procedure 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must state:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). In addition, the PSLRA requires that the notice contain (1) "[t]he amount of the settlement . . . determined in the aggregate and on an average per

17

share basis"; (2) as relevant here, "the average amount of [the] potential damages per share"; (3) a statement of any fees or costs that counsel intends to seek from the settlement fund; (4) identification of, and contact information for, counsel; and (5) "[a] brief statement explaining the reasons why the parties are proposing the settlement." 15 U.S.C. § 78u-4(a)(7)(A)-(F).

Here, as described above, the Claims Administrator will identify class members, in part through names and addresses obtained from Wells Fargo's shareholder lists, and mail each class member the Proposed Notice and Claim Form. ECF No. 225-1 at 21; ECF No. 225-1 at 61 (Proposed Notice); ECF No. 225-1 at 86 (Claim Form). The Claims Administrator will also publish the Summary Notice in the *Wall Street Journal* and the *Los Angeles Times*, and transmit it over the *PR Newswire*. ECF No. 225 at 33; ECF No. 225-1 at 51; ECF No. 225-1 at 97 (Summary Notice). The Proposed Notice contains all of the information required by Rule 23(c)(2)(B) and 15 U.S.C. § 78u-4(a)(7).

The Court preliminary approves the Notice Plan, subject to the following alterations:

1. For a class member to request exclusion from the Settlement, the only information the class member must provide in a letter to the Claims Administrator is (1) the class member's name, (2) a statement that the class member wishes to be excluded from the settlement class in *Hefler v. Wells Fargo & Co.*, Case No. 3:16–cv–05479–JST, and (3) the class member's signature. Information regarding class members' transactions involving Wells Fargo shares, or class members' telephone numbers and addresses, is not required, contrary to what is currently indicated in the Proposed Notice. *See* ECF No. 225-1 at 79.

2. Any objections to the Settlement should be mailed only to the Court. Once received by the Court, the Clerk of the Court will file the objections on the Court's electronic filing system. As currently worded, the Proposed Notice and the Summary Notice require objections to be sent to Lead Counsel and Wells Fargo's Counsel, *see* ECF No. 225-1 at 80, 98, which is unnecessary, as electronic filing of an objection on the case docket constitutes service on the parties.

3.   Objectors will not be required to provide all of the detailed information that is requested in the Proposed Notice. *See* ECF No. 225-1 at 80-81. Instead, objectors must provide only the information requested in the following proposed language:

> You may object to the proposed settlement in writing by providing your full name, the basis for your belief that you are a member of the settlement class, the basis of your objection, and your signature. You may not ask the Court to order a larger settlement; the Court can only approve or deny the settlement. You may also appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney.
>
> All written objections and supporting papers must: (a) clearly identify the case name and number (*Hefler v. Wells Fargo & Co.*, Case No. 3:16-cv-05479-JST); (b) be submitted to the Court either by mailing them to the Clerk of the Court for the United States District Court for the Northern District of California, 450 Golden Gate Avenue, Box 36060, San Francisco, CA 94102, or by filing them in person at any location of the United States District Court for the Northern District of California; and (c) be filed or postmarked on or before [the objection date].

The parties may elect to use this format, or adopt a different format requesting the same, but not more, information.

4.   The Summary Notice shall be revised to provide "the nature of the action" and "the class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(i), (iii).

The Court preliminarily approves the notice plan, as modified above.[4]

### E.  Allocation Plan

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994) (citing *City of Seattle*, 955 F.2d at 1284-85).

The allocation plan for the Settlement tailors the recovery of each class member to the

---

[4] The Court acknowledges Union's report that the Defendants have complied with the notice requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, *see* ECF No. 231 at 2, and that the parties have stipulated that the Defendants will provide proof of such compliance prior to the fairness hearing, ECF No. 225-1 at 21. Because the parties' papers are unclear on this point, the Court notes that the Act requires that "*each defendant* that is participating in the proposed settlement shall serve [notice] upon the appropriate" officials. 28 U.S.C. § 1715(b) (emphasis added).

timing of any sales or purchases of Wells Fargo common stock relative to periods of alleged artificial inflation and corrective disclosures, as well as the number of shares involved with each class member's claim. *See* ECF No. 225 at 28. In other words, the allocation plan disburses the Settlement Fund to class members "on a *pro rata* basis based on the relative size of" the potential claims that they are compromising. *Id.* This type of pro rata distribution has frequently been determined to be fair, adequate, and reasonable. *See, e.g.*, *Thomas*, 2017 WL 4750628, at *8; *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 1365900, at *4 (N.D. Cal. Apr. 3, 2013) (approving similar plan of distribution); *In re Vitamins Antitrust Litig.*, No. 99-197 TFH, 2000 WL 1737867, at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."). Further, while the allocation plan sets a $10 minimum in order for a class member to receive a distribution, "numerous cases . . . have approved similar or higher minimum thresholds." *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 897 (9th Cir. 2017) (collecting cases).

The Court preliminarily approves the allocation plan.

## CONCLUSION

In sum, the Court (1) conditionally certifies the proposed class for settlement purposes; (2) grants the motion to file the confidential supplemental agreement under seal; (3) and preliminarily approves the class action settlement, notice plan (as modified), and allocation plan. The fairness hearing shall be held on December 18, 2018 at 2:00 p.m. All other dates and deadlines shall be calculated pursuant to the terms of the Settlement.

**IT IS SO ORDERED.**

Dated: September 4, 2018



JON S. TIGAR
United States District Judge