**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore Graziano (*pro hac vice*)
Salvatore@blbglaw.com
Adam Wierzbowski (*pro hac vice*)
Adam@blbglaw.com
Rebecca E. Boon (*pro hac vice*)
Rebecca.Boon@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Lead Counsel for Lead Plaintiff Union Asset Management Holding AG and the Settlement Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GARY HEFLER, MARCELO MIZUKI, GUY SOLOMONOV, UNION ASSET MANAGEMENT HOLDING AG, and CITY OF HIALEAH EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>WELLS FARGO & COMPANY, JOHN G. STUMPF, JOHN R. SHREWSBERRY, CARRIE L. TOLSTEDT, TIMOTHY J. SLOAN, DAVID M. CARROLL, DAVID JULIAN, HOPE A. HARDISON, MICHAEL J. LOUGHLIN, AVID MODJTABAI, JAMES M. STROTHER, JOHN D. BAKER II, JOHN S. CHEN, LLOYD H. DEAN, ELIZABETH A. DUKE, SUSAN E. ENGEL, ENRIQUE HERNANDEZ JR., DONALD M. JAMES, CYNTHIA H. MILLIGAN, FEDERICO F. PEÑA, JAMES H. QUIGLEY, JUDITH M. RUNSTAD, STEPHEN W. SANGER, SUSAN G. SWENSON, and SUZANNE M. VAUTRINOT<br><br>Defendants. | Case No. 3:16-cv-05479-JST<br><br><u>CLASS ACTION</u><br><br>**LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN**<br><br>Judge: Hon. Jon S. Tigar<br>Courtroom: 6<br>Date: June 3, 2020<br>Time: 2:00 p.m. |

**TABLE OF CONTENTS**

NOTICE OF MOTION FOR LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN ........ 1

STATEMENT OF ISSUES TO BE DECIDED ........ 2

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

I. BACKGROUND ........ 3

II. CLAIMS ADMINISTRATION ........ 4

A. Disputed Claims ........ 5

B. Late Claims – and Final Cut-Off Date ........ 7

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........ 8

IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ........ 9

A. Distribution of the Net Settlement Fund ........ 10

B. Additional Distribution(s) of the Net Settlement Fund ........ 11

V. ADDITIONAL EXCLUSIONS FROM THE SETTLEMENT CLASS ........ 12

VI. RELEASE OF CLAIMS ........ 13

VII. CONCLUSION ........ 13

**NOTICE OF MOTION FOR LEAD PLAINTIFF'S MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on June 3, 2020, at 2:00 p.m., Lead Plaintiff Union Asset Management Holding, AG, will move the Court, before the Honorable Jon S. Tigar, for entry of the accompanying [Proposed] Order Approving Distribution Plan (the "Class Distribution Order").[1] The motion is based on the following Memorandum of Points and Authorities set forth below and the accompanying Declaration of Alexander Villanova in Support of Lead Plaintiff's Motion for Approval of Distribution Plan (the "Villanova Declaration" or "Villanova Decl.").

If approved, the Class Distribution Order would, *inter alia*: (i) approve the administrative determinations of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq"), accepting and rejecting Claims submitted in connection with the Settlement reached in the above-captioned Action, as stated in the Villanova Declaration; (ii) direct the distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; (iii) direct that distribution checks state that the check must be cashed within 90 days after the issue date; (iv) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (v) approve the recommended plan for any funds remaining after the distribution; (vi) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlement; (vii) approve requests for

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated July 30, 2018 (ECF No. 225-1) (the "Stipulation").

exclusion from the Settlement Class that were received from certain individuals who received notice of the Settlement after the deadline for requests of exclusion; (viii) release claims related to the administration process; and (ix) authorize the destruction of Proof of Claim Forms and supporting documents at an appropriate time.

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should enter the proposed Class Distribution Order which will, among other things, approve the Claims Administrator's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement, approve the recommended plan for any funds remaining after the distribution, approve the Claims Administrator's fees and expenses, and exclude additional individuals from the Settlement Class pursuant to their requests.

## MEMORANDUM OF POINTS AND AUTHORITIES

Lead Plaintiff respectfully moves for entry of the proposed Class Distribution Order approving the proposed plan for the distribution of the proceeds of the Settlement in this Action, which is set forth in the accompanying Villanova Declaration, submitted on behalf of Epiq, the Court-approved Claims Administrator.

If entered by the Court, the Class Distribution Order would, among other things, (i) approve Epiq's administrative recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court, while maintaining a Reserve for any tax liability or claims administration-related contingencies that may arise; and (iii) approve Epiq's fees and expenses incurred and estimated to be incurred in the administration of the Settlement.

## I. BACKGROUND

Lead Plaintiff, on behalf of itself and the other members of the Settlement Class, settled this Action in return for payment of $480 million in cash by or on behalf of Wells Fargo.

In accordance with the Order Granting Preliminary Approval of Class Action Settlement and Granting Motion to Seal (ECF No. 234) (the "Preliminary Approval Order") entered by the Court, Epiq mailed the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Proof of Claim Form" or "Claim Form" and, together with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. As stated in the Villanova Declaration, Epiq has disseminated over two million Notice Packets to potential Settlement Class Members and nominees. *Id.* ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim so that it would be received or postmarked no later than January 23, 2019. *Id.* ¶ 7.

On December 18, 2018, the Court approved the Settlement and Plan of Allocation in its Order Granting Final Approval of Class Action Settlement and Motion for Attorney's Fees and Expenses (ECF No. 252). On December 20, 2018, the Court entered the Judgment Approving Class Action Settlement (ECF No. 255) ("Judgment") and Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 253). In the Judgment, the Court retained continuing and exclusive jurisdiction over, among other things, implementing the Settlement, including the disposition of the Settlement Fund and any motion to approve the Class Distribution Order. *See* Judgment ¶ 13.

Epiq has completed processing the Claims received and the Effective Date of the

Settlement has occurred. On April 20, 2020, the United States Court of Appeals for the Ninth Circuit denied the only pending appeal by one individual objector to Plaintiffs' attorneys' fees (*see* Ninth Cir. Case No. 19-15140, Dkt.35-1). The Net Settlement Fund may now be distributed to Authorized Claimants, pending the Court's approval. In accordance with paragraph 28 of the Stipulation, Lead Plaintiff respectfully asks the Court to enter the Class Distribution Order approving the Distribution Plan.

## II. CLAIMS ADMINISTRATION

As detailed in the accompanying Villanova Declaration, through March 8, 2020, Epiq received and processed 706,213 Claims. Villanova Decl. ¶ 7. All Claims received through March 8, 2020, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*id.*), and Epiq has worked with Claimants to help them perfect their Claims (*see id.* ¶¶ 19-26).

As discussed in the Villanova Declaration, many of the Claims submitted in the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id.* ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, a letter (if the Claimant filed a paper Claim) (the "Deficiency Notice") or an email (if the Claimant filed an electronic Claim) (the "Status Email" and "Transaction Report") was sent by Epiq to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim. *Id.* ¶¶ 20, 22. The Deficiency Notice or Status Email advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the letter or email or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of

ineligibility was not cured. *Id.* ¶¶ 20, 23. An example of a Deficiency Notice is attached as Exhibit A to the Villanova Declaration and samples of a Status Email and Transaction Report are attached thereto as Exhibits B and C, respectively.

**A. Disputed Claims**

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and Status Emails and worked with them to resolve deficiencies where possible. Villanova Decl. ¶¶ 21, 26. Consistent with paragraph 26(e) of the Stipulation, the Deficiency Notices and Status Emails specifically advised the Claimant or filer of the right, within 20 days after sending the Deficiency Notice or Status Email, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. *Id.* ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully-processed Claims, Epiq received 483 requests for review by the Court of its administrative determinations. *Id.* ¶ 28. To resolve these disputes without necessitating the Court's intervention, Epiq attempted to contact all persons requesting Court review who had not cured the deficiency in their Claim with their written response, and with respect to those Claimants who were reached, Epiq answered all their questions, fully explained Epiq's determination of the Claim's status, and facilitated the submission of missing information or documentation where applicable. *Id.* As a result of these efforts, 469 Claims for which Court review had been requested have either been cured or the Claimant withdrew the request for Court review. *Id.*

Currently 14 Claims remain disputed and are being submitted to the Court for resolution (the "Disputed Claims"). *Id.* ¶ 29. Epiq has made multiple attempts to contact each of the Disputing Claimants, by telephone and/or email. For those Disputing Claimants whom Epiq was able to contact, an Epiq representative answered all their questions and fully explained Epiq's

determination of the Claim's status. However, these Disputing Claimants have indicated their desire to maintain the request for Court review. *Id.* ¶ 31.

Exhibit D of the Villanova Declaration contains copies of the Disputed Claims and supporting documentation submitted by the 14 Disputing Claimants related to each Disputed Claim and a chart (the "Disputed Claims Chart") setting forth the reasons for the rejection of each Disputed Claim.[2] *Id.* ¶ 29. Epiq recommends the rejection of Disputed Claims Nos. 1 through 10 because none of these Disputed Claims calculate to a Recognized Claim under the Court-approved Plan of Allocation. *Id.* ¶ 30. Epiq also recommends the rejection of Disputed Claims Nos. 11 through 13 because none of these Disputed Claims claimed an eligible Class Period purchase of Wells Fargo common stock. *Id.*

In addition, Epiq identified one Claim as having been submitted by someone on the "watch list" of known questionable filers that Epiq has developed throughout its years of experience as a claims administrator in conjunction with the Federal Bureau of Investigation ("FBI") and this claim was reported to the federal authorities as being potentially fraudulent. Epiq rejected this one questionable Claim for having an uncured condition of ineligibility and this Claim is identified in the Disputed Claims Chart and provided to the Court as Disputed Claim No. 14.

Lead Counsel has reviewed the Disputed Claims and Epiq's determinations and believes that these Claims should be rejected for the reasons set forth in the Disputed Claims Chart.

As shown in the Villanova Declaration, of the 706,213 Claims that are the subject of this

---

[2] For privacy reasons, the documents included in Exhibit D have been redacted to remove all personal information such as street addresses, email addresses, telephone numbers, account numbers, Taxpayer ID, Social Security, or Social Insurance Numbers, and all financial and transaction information not related to the Disputing Claimants' transactions in Wells Fargo common stock, unless the financial or transaction information serves as a basis for the dispute.

motion, Epiq has determined that 331,774 are acceptable in whole or in part, and that 374,439 (including the Disputed Claims discussed above) should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. *Id.* ¶¶ 36-39. Lead Plaintiff respectfully requests that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Villanova Declaration.

**B. Late Claims – and Final Cut-Off Date**

The 706,213 Claims received through March 8, 2020, include 133,706 that were postmarked or received after the Court-approved Claim submission deadline of January 23, 2019, but that were received before March 8, 2020. Villanova Decl. ¶¶ 32, 38. Those late Claims have been fully processed, and 67,838 of them are, but for the late submission, otherwise eligible to participate in the Settlement. *Id.* Although these 67,838 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. The Court has discretion to accept Claims received after the submission deadline.[3] Lead Plaintiff respectfully submits that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline, if it was submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiff

---

[3] *See* Notice ¶ 48 ("*Unless the Court otherwise orders*, any Settlement Class Member who fails to submit a Claim Form postmarked on or before January 23, 2019 shall be fully and forever barred from receiving payment pursuant to the Settlement….") (emphasis added).

respectfully requests that this Court order that any new Claims received after March 8, 2020, and any adjustments to previously-filed Claims that would result in an increased Recognized Claim amount be barred, subject to the provisions of paragraph 42(f) of the Villanova Declaration. Should an adjustment be received that results in a lower Recognized Claim amount, that adjustment will be made, and the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant. Villanova Decl. ¶ 33. At the time when Lead Counsel, in consultation with Epiq, determines that a further distribution is not cost-effective as provided in paragraph 42(e) of the Villanova Declaration, any Claims received or modified after March 8, 2020, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks (after payment of fees and expenses as provided in paragraph 42(f) of the Villanova Declaration, at the discretion of Lead Counsel, and to the extent possible).

## III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Lead Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶ 2. As stated in the accompanying Villanova Declaration, Epiq's fees and expenses for its work performed on behalf of the Settlement Class, as well as an estimate for the costs that will be incurred in connection with the Initial

Distribution of the Net Settlement Fund, are $5,504,385.70.[4] *Id.* ¶ 41. These costs reflect significant work done by Epiq to mail the 2,092,490 Notice Packets and process the 706,213 Presented Claims filed for this matter. As illustrated in the invoices and invoice summary provided in Exhibit H, this includes 1) costs related to mailing the Notice Packets; 2) all-inclusive fees which cover all hourly time related to the processing of Claims as well as any responses to Deficiency Notices or Status Emails in relation to any deficiencies on these Claims; and 3) costs for the reimbursement of brokers, banks, and nominees for their work and/or postage costs that provided Notice Packets to potential Settlement Class Members. *Id.* To date, Epiq has received payment in the amount of $1,000,000.00 for its fees and expenses. *Id.* Accordingly, there is an outstanding balance of $4,504,385.70 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the initial distribution. *Id.* Lead Counsel reviewed Epiq's invoices and respectfully requests on behalf of Lead Plaintiff that the Court approve all of Epiq's fees and expenses.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed. Lead Plaintiff respectfully moves the Court for entry of an order approving Epiq's determinations concerning acceptance and rejection of the Claims that are included in the present motion and approving the proposed plan for the distribution of the Net Settlement Fund as stated in the Villanova Declaration (the "Distribution Plan"). Under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 19, 23.

---

[4] Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. *See* Villanova Decl. ¶ 41 n.3.

### A. Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute approximately 90% of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (the "Initial Distribution"). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See* Villanova Decl. ¶ 42(a)(1). In accordance with the Court-approved Plan of Allocation, Epiq will eliminate from the Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id.* ¶ 42(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more (the "Distribution Amount"). *Id.* ¶ 42(a)(3). Authorized Claimants whose Distribution Amount calculates to less than $100.00 under subparagraph 42(a)(3) of the Villanova Declaration will be paid their full Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id.* ¶ 42(a)(4). These Authorized Claimants will get no additional funds in subsequent distributions. *Id.* After deducting the payments to the Claims Paid in Full, 90% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $100.00 or more under subparagraph 42(a)(3) of the Villanova Declaration. *Id.* ¶ 42(a)(5). The remaining 10% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability or claims administration-related contingencies that may arise. *Id.* To the extent the Reserve is not depleted, the remainder will be distributed in the

Second Distribution described in subparagraph 42(d) of the Villanova Declaration. *Id.*

In order to encourage Authorized Claimants to cash their checks promptly, Lead Plaintiff proposes that the distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id.* ¶ 42(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 42(b) footnote 4 of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all of these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *Id.* ¶ 42(c).

**B. Additional Distribution(s) of the Net Settlement Fund**

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, Epiq will, in consultation with Lead Counsel, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution (including from the Reserve and the funds for all void stale-dated checks), after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of the Second Distribution), and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Villanova Decl. ¶ 42(d). If, after the Second Distribution, any funds remain in the Net Settlement Fund because of uncashed checks or otherwise, then after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, and

if cost-effective, subsequent distributions of the funds remaining in the Net Settlement Fund, after deduction of costs and expenses as described above and subject to the same conditions, will take place at six-month intervals thereafter. *Id.* When Lead Counsel, in consultation with Epiq, determines that further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after March 8, 2020, Epiq will process those Claims. *Id.* ¶ 42(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an adjustment was received after March 8, 2020, and resulted in an increased Recognized Claim, may be paid in accordance with paragraph 42(f) of the Villanova Declaration. *Id.* If any funds remain in the Net Settlement Fund after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to the Investor Protection Trust. *Id.*

## V. ADDITIONAL EXCLUSIONS FROM THE SETTLEMENT CLASS

In order to provide notice of the Settlement to as many potential members of the Settlement Class as possible, Epiq continued to mail Notice Packets to additional potential Settlement Class Members who were identified by Wells Fargo or by brokers and nominees, even where those names and addresses were provided by certain brokers and nominees after the original deadlines for receipt of such names and addresses. As a result, a small percentage of Notice Packets were mailed to potential Settlement Class Members after the November 27, 2018 deadline for receipt of exclusions from the Settlement or after the December 20, 2018 Settlement Hearing. Fourteen (14) persons who received Notice Packets during this period have requested to be excluded from the Settlement Class. Lead Plaintiff believes that it would be appropriate to honor these individuals' requests and exclude these individuals from the Settlement Class. Lead

Counsel has consulted with Defendants and they consent to this request. The list of 14 additional individuals to be excluded from the Settlement Class is set forth in Exhibit 1 to the proposed Class Distribution Order.

## VI. RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. Accordingly, Lead Plaintiff respectfully requests that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully submits that the motion should be granted and the proposed Class Distribution Order should be entered.

The Initial Distribution to Authorized Claimants is expected to occur approximately six weeks after the Court enters the Class Distribution Order. In accordance with the Northern District of California's Procedural Guidance for Class Action Settlements, Lead Plaintiff will file a "Post-Distribution Accounting" within 21 days after the Initial Distribution is completed.

Dated: April 22, 2020

Respectfully Submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
*/s/ Salvatore Graziano*
Salvatore Graziano (pro hac vice)
Salvatore@blbglaw.com
Adam Wierzbowski (pro hac vice)
Adam@blbglaw.com
Rebecca E. Boon (pro hac vice)
Rebecca.Boon@blbglaw.com
1251 Avenue of the Americas, 44th Floor
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Lead Counsel for Lead Plaintiff and the Settlement Class*

**KLAUSNER KAUFMAN JENSEN & LEVINSON**
Robert D. Klausner
bob@robertdklausner.com
Stuart A. Kaufman
stu@robertdklausner.com
780 NW 4th Street
Plantation, FL 33317
Telephone: (954) 916-1202
Facsimile: (954) 916-1232

*Counsel for Plaintiff City of Hialeah Employees' Retirement System*

**ROBBINS GELLER RUDMAN & DOWD LLP**
Shawn A. Williams
Aelish M. Baig
Jason C. Davis
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: (415) 288-4545
Facsimile: (415) 288-4534

*Liaison Counsel for Plaintiffs*